1  **KRONENBERGER ROSENFELD, LLP**

2  Karl S. Kronenberger (Bar No. 226112)
   Jeffrey M. Rosenfeld (Bar No. 222187)

3  Virginia A. Sanderson (Bar No. 240241)
   150 Post Street, Suite 520

4  San Francisco, CA 94108
   Telephone:  (415) 955-1155

5  Facsimile:  (415) 955-1158
   karl@KRInternetLaw.com

6  jeff@KRInternetLaw.com
   ginny@KRInternetLaw.com

7

8  Attorneys for Plaintiff

9

10                    **UNITED STATES DISTRICT COURT**

11                    **NORTHERN DISTRICT OF CALIFORNIA**

12

13

14  **VERDE MEDIA CORP.** f/k/a The Verde       Case No. CV14-00891
    Media Group, LLC, a Nevada corporation,

15                                               **COMPLAINT FOR DAMAGES**
                   Plaintiff,
16                                               **DEMAND FOR JURY TRIAL**

17          v.

18  **RON LEVI**, an individual; **ARDESHIR S.
    AKHAVAN**, an individual; **HARKLET**
19  **ENTERPRISES, LTD.**, a Cyprus limited
    company; **NUNATON COMPANY, LTD.**,
20  a Cyprus limited company; **INTERNET
    BUSINESS SERVICES, LLC**, a limited
21  liability company of unknown origin;
    **NAUTELL CAPITAL LTD.**, a Cyprus
22  limited company; **CASH TRAFFIC LTD.**,
    a limited company of unknown origin;
23  **ALACRE TRADING LTD.**, a Cyprus
    limited company; and **DOES 1-20**,
24
                   Defendants.
25

26

27

28



Plaintiff Verde Media Corp., a Nevada corporation, by and through its undersigned counsel, states and alleges as follows:

**NATURE OF THE ACTION**

1.     This action alleges breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, fraudulent inducement, tortious interference with business relationship, and violations of the federal Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., on behalf of Plaintiff Verde Media Corp. ("Plaintiff"), and against Ron Levi ("Levi"), Ardeshir S. Akhavan ("Akhavan"), Harklet Enterprises Ltd. ("Harklet"), Nunaton Company Ltd. ("Nunaton"), Internet Business Services, LLC ("IBS"), Nautell Capital Ltd. ("Nautell"), Cash Traffic Ltd. ("Cash Traffic"), and Alacre Trading Ltd. ("Alacre"), together with certain named and as yet unnamed employees, directors, agents, co-conspirators, and aiders and abettors (collectively, "Defendants").

2.     Plaintiff alleges that Levi and Akhavan (collectively, the "Individual Defendants"), own and operate a complex collection of domestic, foreign, and international corporate entities, including without limitation Harklet, Nunaton, IBS, Nautell, Cash Traffic, and Alacre (collectively, the "Corporate Defendants"), with the express intent of obfuscating the corporate structure thereof and evading liability to consumers, administrative and law enforcement agencies, and those with which they do business, such as Plaintiff.  Plaintiff further alleges that, under the umbrella of this corporate web, Defendants engaged in a pattern of deceptive practices, including fraud, to mislead Plaintiff into brokering key relationships for Defendants, resulting in tens of millions of dollars of Internet traffic being driven to Defendants' adult and dating websites, and millions of dollars in damages to Plaintiff when Defendants first avoided, and later flatly refused, payment of the broker commissions owed to Plaintiff.

3.     This action seeks damages, including treble and punitive damages, redress of injuries, attorneys' fees and costs, and other relief, all arising out of Defendants' breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment,

1   fraudulent inducement, tortious interference with Plaintiff's business relationships, and

2   violations of RICO.

3                                **JURISDICTION AND VENUE**

4       4.      This Court has subject matter jurisdiction of Plaintiff's RICO claim pursuant

5   to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) (civil remedies for RICO violations).

6       5.      This Court has supplemental jurisdiction of Plaintiff's claims brought under

7   the laws of the State of California pursuant to 28 U.S.C. § 1367(a) in that Plaintiff's state

8   law claims are so related to the RICO claim raised in this Complaint that they form part of

9   the same case or controversy under Article III of the United States Constitution.

10      6.      Venue is proper under 28 U.S.C. § 1391 because many of the incidents,

11  events, or omissions complained of and giving rise to the instant claims and controversy

12  occurred within the State of California and the parties, and each of them, have agreed

13  through counsel that this Court is a proper Venue.

14      7.      This Court has personal jurisdiction over Defendant Levi because, on

15  information and belief, he is a resident of the State of California.

16      8.      This Court has personal jurisdiction over Defendant Akhavan because, on

17  information and belief, he is a resident of the State of California.

18      9.      This Court has personal jurisdiction over Defendant Harklet because, on

19  information and belief, its principal place of business is located in Calabasas, California.

20      10.     This Court has personal jurisdiction over Defendant Nunaton because, on

21  information and belief, its principal place of business is located in Calabasas, California.

22      11.     This Court has personal jurisdiction over Defendant IBS because, on

23  information and belief, its principal place of business is located in Calabasas, California.

24      12.     This Court has personal jurisdiction over Defendant Nautell because, on

25  information and belief, its principal place of business is located in Calabasas, California.

26      13.     This Court has personal jurisdiction over Defendant Cash Traffic because,

27  on information and belief, its principal place of business is located in Calabasas,

28  California.

14.     This Court has personal jurisdiction over Defendant Alacre because, on information and belief, its principal place of business is located in Calabasas, California.

## INTRADISTRICT ASSIGNMENT

15.     By agreement of the parties, this action should be assigned to the San Francisco Division or the Oakland Division.

## PARTIES

16.     Plaintiff Verde Media Corp. is a Nevada corporation with its principal place of business located in Clearwater Beach, Florida.  Plaintiff was formerly known as The Verde Media Group, LLC, a California limited liability company.  On or about January 10, 2014, Verde Media Corp. was formed and assumed all of the rights and obligations of its predecessor-in-interest, The Verde Media Group, LLC.

17.     On information and belief, Defendant Ron Levi is an individual residing in Calabasas, California.

18.     On information and belief, Defendant Ardeshir S. Akhavan is an individual residing in Agoura Hills, California.

19.     On information and belief, Defendant Harklet Enterprises Ltd. is a limited corporation formed under the laws of Cyprus.  On information and belief, Harklet's Cyprus address is used for registration and mail-forwarding purposes only, and the vast majority of Harklet's business operations take place at 5146 Douglas Fir Road, Calabasas, California.

20.     On information and belief, Defendant Nunaton Company Ltd. is a limited corporation formed under the laws of Cyprus.  On information and belief, Nunaton's Cyprus address is used for registration and mail-forwarding purposes only, and the vast majority of Nunaton's business operations take place at 5146 Douglas Fir Road, Calabasas, California.

21.     On information and belief, Defendant Internet Business Services, LLC is a limited liability company formed under the laws of a state unknown to Plaintiff at this time.

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1    On information and belief, the vast majority of IBS's business operations take place at
2    5146 Douglas Fir Road, Calabasas, California.

3    22.    On information and belief, Defendant Nautell Capital, Ltd. is a limited
4    corporation formed under the laws of Cyprus.   On information and belief, Nautell's
5    Cyprus address is used for registration and mail-forwarding purposes only, and the vast
6    majority of Nautell's business operations take place at 5146 Douglas Fir Road,
7    Calabasas, California.

8    23.    On information and belief, Defendant Cash Traffic, Ltd. is a limited
9    corporation formed under the laws of a foreign jurisdiction unknown to Plaintiff at this
10   time.  On information and belief, the vast majority of Cash Traffic's business operations
11   take place at 5146 Douglas Fir Road, Calabasas, California.

12   24.    On information and belief, Defendant Alacre Trading Ltd. is a limited
13   corporation formed under the laws of Cyprus.  On information and belief, Alacre's Cyprus
14   address is used for registration and mail-forwarding purposes only, and the vast majority
15   of Alacre's business operations take place at 5146 Douglas Fir Road, Calabasas,
16   California.

17   25.    On information and belief, and at all relevant times, Defendants Levi and
18   Akhavan have been employees, officers, directors, agents and/or representatives of the
19   Corporate Defendants and conspired to commit the wrongful acts alleged herein and are
20   jointly and/or severally liable for the wrongful acts alleged herein.

21   26.    Defendants DOES 1-20 (the "Doe Defendants") are as yet to be identified
22   officers, employees, agents, co-conspirators, and/or aiders and abettors of Defendants.
23   Upon further discovery, and when the relevant information has been obtained, Plaintiff
24   will seek to amend this Complaint to state the true names and capacities of the Doe
25   Defendants.

26   //
27   //
28   //

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### Plaintiff and Plaintiff's Business

27.     Plaintiff is a broker of Internet traffic specializing in the adult paysite, adult webcam (referred to within the industry as "cam"), and adult dating industries.

28.     As an Internet traffic broker, Plaintiff has expended substantial time and resources developing key relationships with a roster of website and blog owners—known in the industry as "publishers" or "affiliates."  Plaintiff has also developed key relationships with so-called "ad networks" or "affiliate networks," which are companies that aggregate hundreds or even thousands of publishers, thereby substantially reducing the number of persons and entities that the advertiser client has to personally manage.

29.     The directed flow of consumers from publisher to advertiser is commonly referred to within the business as Internet "traffic" or "leads," dependent on the type of action or information ultimately sought from the consumer.

30.     The adult paysite, adult cam, and adult dating industries are highly specialized, and only a handful of brokers have developed as many key contacts as Plaintiff has with its roster of publishers and networks who have demonstrated measurable success in driving Internet traffic within this industry.

31.     Plaintiff's clients are the owners and operators of adult-themed websites and adult dating websites, and are referred to within the industry as "advertisers."

32.     Plaintiff provides its brokerage services by referring key publishers or networks to advertisers.

33.     Like brokers in a variety of industries, Plaintiff is compensated for its services through payment of a broker or referral fee.  Specifically, Plaintiff's advertiser clients generally pay Plaintiff a commission between five dollars ($5) and ten dollars ($10) for each sale or other financial transaction completed by a consumer with the advertiser as a result of the referral.

34.     Adult paysite, adult cam, and adult dating websites can be extremely lucrative if the websites are advertised to the right consumers.  A single referral from

1    Plaintiff can result in tens of millions of dollars in traffic to a particular advertiser, in which

2    case, Plaintiff is owed and paid millions of dollars in broker fees over the life of the referral

3    relationship.

**Defendants and Defendants' Businesses**

4

5    35.    Defendants own and operate several lucrative adult paysites, adult cam,

6    and adult dating websites.

7    36.    In relevant part, the Individual Defendants and Harklet own and operate the

8    website located at <cecash.com>[1] (the "CECash Website").  The CECash Website serves

9    as a portal for publishers and networks driving traffic to other websites owned and

10   operated by Defendants.  The homepage of the CECash Website states:

11
12          Over 50 New sites to promote!  New marketing tools!  New User Friendly
            Stats Interface!  The all new Cecash [sic] 3.0 is all about making YOU
13          more money!  For 11 years, we have strived to create innovative sites and
            products to diversify your income and make your traffic convert.  After 11
14          years, 2 billion surfers, 6.9 million members, and over $105,000,000 dollars
            in webmaster payouts, we are happy to present you with the all new
15          CECash 3.0!

16   37.    On the "Adult Webmaster Affiliate Program Terms and Conditions" page of

17   the CECash Website, the terms identify the owner of the website as "Harklet Enterprises,

18   Limited., doing business as, CECash.com [all sic]."

19   38.    In relevant part, Plaintiff is also informed and believes that the Individual

20   Defendants and Nunaton own and operate the website located at <cashtraffic.com> (the

21   "Cash Traffic Website").  Like the CECash Website, the Cash Traffic Website also serves

22   as a portal for publishers and networks driving traffic to other websites owned and

23   operated by Defendants.

24   39.    On the "Adult Webmaster Affiliate Program – Terms and Conditions" page of

25   the Cash Traffic Website, the terms identify "Nunaton Company Ltd, doing business as,

26   CashTraffic.com [all sic]" as the owner of the Cash Traffic Website.

27

28   _____
     [1] As a courtesy to the Court, Plaintiff warns that most, if not all, of the websites referenced herein
     contain graphic adult content.

KRONENBERGER | ROSENFELD    150 Post Street, Suite 520, San Francisco, CA  94108

40.     In relevant part, Plaintiff is also informed and believes that the Individual Defendants and Alacre own and operate the website located at <iballers.com> (the "iBallers Website").   The iBallers Website also serves as a portal for publishers and networks driving traffic to other websites owned and operated by Defendants.

41.     While the "Terms and Conditions" page of the iBallers Website does not expressly identify an owner of the Website, it does refer persons making claims of copyright infringement to its copyright agent at legal@alacretrading.com.  Accordingly, Plaintiff is informed and believes that the iBallers Website is owned and/or operated by Alacre in conjunction with the Individual Defendants.

42.     In relevant part, Plaintiff is also informed and believes that the Individual Defendants and Nautell own and operate the website located at <citysex.com> (the "City Sex Website").  The City Sex Website is an adult dating website.

43.     On the "CitySex Terms of Use Agreement" page of the City Sex Website, the terms identify Nautell Capital Limited as the "operator" of the Website.

44.     On information and belief, IBS is the entity used by Defendants to lease Defendants' office space located at 5146 Douglas Fir Road, Calabasas, California, and to hire many of the employees working for the benefit of all Defendants.

45.     The websites and business entities referenced above in Paragraphs 36 through 44 are just a small portion of the websites and corporations owned, operated, and/or affiliated with Defendants.  For example, the Cash Traffic Website lists several other websites as one of "our websites," each of which is affiliated with different corporate entities via its website terms and domain registration, as listed in the WHOIS database:

| Website Name | Affiliated Corporation (Terms) | Affiliated Corporation (WHOIS) |
|---|---|---|
| <lifetimelesbianpass.com> | Dunkirk Enterprises Ltd. (UK) | Demurrelt Enterprises Ltd. (Cyprus) |
| <lifetimeblackpass.com> | Dunkirk Enterprises Ltd. (UK) | Demurrelt Enterprises Ltd. (Cyprus) |
| <freelifetimeteen.com> | Tejas Enterprises Ltd. (UK) | (privacy protected) |

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

| <freelifetimeamateurs.com> | Newgrange Trading Ltd. (UK) | (privacy protected) |
|---|---|---|
| <freelifetimepov.com> | Newgrange Trading Ltd. (UK) | (privacy protected) |
| <freelifetimepornstars.com> | Arcadiam Trading Ltd. (UK) | (privacy protected) |
| <freelifetimehentai.com> | Bazan Trading Ltd. (UK) | (privacy protected) |
| <lifetimetrannypass.com> | Harlem Goal Investments Ltd. (UK) | Demurrelt Enterprises Ltd. (Cyprus) |
| <lifetimeboobiespass.com> | Vago Trading Ltd. (UK) | Demurrelt Enterprise Ltd. (Cyprus) |
| <lifetimeanalpass.com> | Blackball Entertainment Ltd. (Cyprus) | Demurrelt Enterprise Ltd. (Cyprus) |
| <freelifetimemilfpass.com> | Renaud Enterprises Ltd. (UK) | Demurrelt Enterprise Ltd. (Cyprus) |

46.     Plaintiff is informed and believes that Defendants own and operate over 50 publisher portal, adult entertainment, and dating websites through numerous entities.

47.     Plaintiff is informed and believes that the Individual Defendants have formed and operate numerous corporate entities, both in the United States and abroad, as a means of fraudulently concealing from Defendants' consumers, business partners, and others—including administrative and law enforcement agencies—that the Individual Defendants are responsible, and therefore liable, for the content and business practices on and/or related to Defendants' websites.

48.     Plaintiff is informed and believes that, at all relevant times, Levi has provided the financial backing for, and derived the principal financial benefit from, the numerous corporate entities that are related to Defendants and their websites.  Indeed, over 50 U.S. corporations and limited liability companies, including ones formed in California and Nevada, have listed Levi as an owner or principal during their corporate lifetime, which is often very short.

49.     In addition to these U.S. corporate entities, Plaintiff is informed and believes that Levi has registered, or caused to be registered, numerous companies abroad, including in the United Kingdom and Cyprus, as referenced in this Complaint.  Plaintiff is

1    informed and believes that Levi registered companies in international jurisdictions with the

2    specific intent of further concealing the true ownership of the Corporate Defendants and

3    Defendants' websites and thereby evading liability for Defendants' deceptive business

4    practices and other misconduct.

5        50.    Plaintiff is informed and believes that Akhavan is in charge of operations for

6    Defendants' business and, as such, has substantial decision-making authority, including

7    with respect to staffing, advertising agreements, and payments to third-party affiliates and

8    brokers.

9        **The Parties' Agreement and Defendants' Breach**

10       51.    On or about November 6, 2012, Defendants entered into an agreement with

11   Plaintiff for the referral of Internet traffic to Defendants' adult websites, including adult

12   paysites and adult dating websites (the "Agreement").

13       52.    The Agreement was made at an in-person meeting between Plaintiff's

14   principal, Jeremy Greene ("Greene"), on the one hand, and Akhavan, as a representative

15   of Defendants, on the other, and the terms of the Agreement were largely memorialized in

16   a series of Skype instant messaging exchanges between the two (the "IMs").

17       53.    The IMs were transmitted via interstate wire in that, for the most part, they

18   were exchanged between Akhavan, who was in California, and Greene, who was in

19   Florida and other states at the time of transmission.

20       54.    The terms of the agreement were as follows:

21       a.  Plaintiff agreed to refer publishers and networks to Defendants (the

22           "Referrals");

23       b.  Defendants agreed to pay Plaintiff $5,000 upfront to get the Referral

24           publishers and networks up and running with respect to their advertising for

25           Defendants;

26       c.  Defendants further agreed to pay Plaintiff $10 for each financial transaction

27           resulting from traffic driven to Defendants by the Referrals; and

28   //

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

d. Plaintiff and Defendants further expressly agreed that the Agreement, and Defendants' payment obligations, would extend to Referrals of new publishers and networks to Defendants as well as publishers and networks that had previously enrolled with Defendants, but were not actively driving substantial traffic to Defendants at the time of the Referral.

55. Throughout the IMs and other electronic communications with Plaintiff, Akhavan, on behalf of Defendants, fraudulently concealed and misrepresented the true identity of Defendants by misrepresenting that Defendants were a single entity known as "CECash." Each fraudulent IM transmitted to Plaintiff by Defendants via interstate wire constituted an act of wire fraud.

56. For example, in the IMs, Akhavan represented that he worked for a company called "CECash." While Akhavan did not disclose it at the time, Plaintiff is now informed and believes that CECash is a fictitious business name used by Harkley and numerous corporate entities owned and operated by Defendants.

57. Pursuant to the Agreement, on or about November 8, 2012, Defendants wired $5,000 to Plaintiff. According to Plaintiff's bank statement, the wire was sent by Cash Traffic.

58. Pursuant to the Agreement, Plaintiff made numerous Referrals to Defendants. In making these referrals, Plaintiff expended time and effort complying with the demands of Defendants in registering the Referral publishers and networks with Defendants' websites, including the CECash Website, the Cash Traffic Website, and the iBallers Website. Plaintiff also assisted in setting up the Referral publishers and networks to send traffic to Defendants' websites, to track said traffic, and to receive payment from Defendants.

59. On information and belief, Plaintiff's Referrals have resulted in millions of dollars of consumer sign-ups and other financial transactions for Defendants.

//

//

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

60.     Yet despite the profitable nature of the Referrals, and Defendants' benefit therefrom, Defendants have failed and refused to pay Plaintiff for anything other than the initial $5,000 fee.

61.     Indeed, in direct contradiction to his earlier statements in the IMs promising to pay Plaintiff for the Referrals, Akhavan, in a September 24, 2013 email to Greene, stated "Go find a real job instead of being a little whiney broker, do something of value and perhaps you will earn value."

62.     Plaintiff is now informed and believes that Defendants have formed and operate numerous corporate entities, both in the United States and abroad, as a means of fraudulently concealing from Defendants' consumers, business partners, and others—including Plaintiff—the true identities of those responsible, and therefore liable, for the content and business practices on and/or related to Defendants' websites.

63.     Plaintiff is informed and believes that Defendants' complex corporate structure, which includes entities of unknown origin (such as Cash Traffic Ltd.) and entities registered in international jurisdictions such as Cyprus, has caused Defendants to believe they are "judgment-proof."  It is this belief that gave Defendants, including Akhavan, the brash confidence to openly renege on the Agreement to pay Plaintiff for the Referrals.

64.     As a result of Defendants' misconduct, Plaintiff has been harmed and continues to be harmed.  Plaintiff estimates that, under the Agreement, Defendants will owe Plaintiff over $5 million through the end of 2014, with the amount growing exponentially thereafter.

### Defendants' Interference with Plaintiff's Business Relationships

65.     Plaintiff is informed and believes that Akhavan, on behalf of Defendants, has contacted several of the Referral publishers and networks and encouraged them to no longer do business with Plaintiff.

66.     For example, in or about September 24, 2013, Akhavan contacted the principal of one of the largest Referral networks and said, regarding Greene (and

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1   therefore Plaintiff), "I would like it if you guys can tell him you will no longer be working

2   with him."

3       67.     As a result of Defendants' misconduct, Plaintiff has been harmed and

4   continues to be harmed.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract

### Against All Defendants)

8       68.     Plaintiff incorporates by reference the allegations contained in paragraphs 1

9   through 67.

10      69.     The Agreement is a valid and enforceable contract between Plaintiff, on the

11  one hand, and Defendants, on the other, and is supported by valuable consideration.

12      70.     Plaintiff has fulfilled all of its obligations under the Agreement.

13      71.     Defendants have materially breached, and continue to breach, the

14  Agreement by failing to honor its terms, including by failing to pay Plaintiff amounts owed

15  pursuant to the Agreement.

16      72.     As a direct and proximate result of Defendants' material breaches of the

17  Agreement, Plaintiff has been damaged in an amount exceeding $5 million and to be

18  proven at trial.

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing

### Against All Defendants)

22      73.     Plaintiff incorporates by reference the allegations contained in paragraphs 1

23  through 72.

24      74.     The Agreement is a valid and enforceable contract between Plaintiff, on the

25  one hand, and Defendants, on the other, and is supported by valuable consideration.

26      75.     Plaintiff has fulfilled all of its obligations under the Agreement.

27  //

28  //

76.    Defendants have unfairly and intentionally interfered with Plaintiff's rights to receive the benefits of the Agreement, including by refusing to pay Plaintiff amounts owed pursuant to the Agreement.

77.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing appurtenant to the Agreement, Plaintiff has been damaged in an amount exceeding $5 million and to be proven at trial.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment/Restitution
### Against All Defendants)

78.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 67.

79.    Plaintiff asserts this claim in the alternative to the First and Second Claims for Relief.

80.    Defendants have been enriched by their receipt of and benefit from the time, effort, and connections of Plaintiff in making the Referrals to Defendants and setting up the Referral publishers and networks with Defendants' websites and tracking and payment platforms so that the Referral publishers and networks could drive traffic to Defendants' websites.

81.    Likewise, Plaintiff has been impoverished by the time and effort it has contributed to making the Referrals and getting the Referred publishers and networks up and running without receiving payment in return from Defendants.

82.    A causal relationship exists between Defendants' enrichment and Plaintiff's impoverishment in that Plaintiff's impoverishment is directly and proximately caused by Defendants' wrongful and unjust refusal to pay Plaintiff for the benefits conferred on Defendants.

83.    Defendants have no reasonable justification for their failure to compensate Plaintiff for the enrichment they have received.

//

1    84.    Plaintiff lacks an adequate remedy provided by law and therefore seeks

2    restitution for Defendants' unjust and unlawful conduct, in an amount exceeding $5

3    million to be proven at trial.

**FOURTH CLAIM FOR RELIEF**

**(Fraudulent Inducement**

**Against All Defendants)**

7    85.    Plaintiff incorporates by reference the allegations contained in paragraphs 1

8    through 67.

9    86.    Beginning on or about November 6, 2012, and continuing through

10   September 2013, Akhavan, on behalf of Defendants, knowingly made false

11   misrepresentations to Plaintiff in the process of negotiating the terms of the Agreement

12   and convincing Plaintiff to provide additional Referrals under the Agreement.

13   Specifically, Akhavan represented that:

14       a. Defendants were a single company called "CECash";

15       b. Defendants intended to pay Plaintiff a fee for all income earned by

16          Defendants as a result of the Referrals, pursuant to the Agreement; and

17       c. Defendants would compensate Plaintiff not only for Referrals of new

18          publishers and networks, but also those publishers and networks that had

19          previously enrolled with Defendants, but were not actively driving substantial

20          traffic to Defendants at the time of the Referral.

21   87.    Defendants knew that the foregoing misrepresentations were false when

22   made and that Defendants intended to pay Plaintiff no money other than the initial $5,000

23   fee.

24   88.    Defendants intended to induce reliance by Plaintiff on the

25   misrepresentations.  Specifically, Defendants intended to induce Plaintiff to enter into the

26   Agreement and provide profitable Referrals.

27   //

28   //

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

89.   Plaintiff did not discover the false nature of Defendants' misrepresentations or omissions until September 2013, when Akhavan, on behalf of Defendants, flatly refused to pay Plaintiff any amounts owed under the Agreement.

90.   As a direct and proximate result of Defendants' misrepresentations, Plaintiff has suffered damages of at least $5 million and according to proof at trial.

91.   Defendants' misrepresentations to Plaintiff, as set forth above, were made purposefully, with fraudulent intent, and without regard for the rights and interests of Plaintiff, thereby entitling Plaintiff to an award of exemplary and punitive damages as to Defendants in an amount sufficient to deter their wrongful conduct.

### FIFTH CLAIM FOR RELIEF

### (Tortious Interference of Business Relationship

### Against All Defendants)

92.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 67.

93.   Plaintiff, as a broker of Internet traffic, has business relationships with a number of publishers and networks specializing in the adult paysite, adult cam, and adult dating website industry.

94.   At all times relevant, Defendants knew of Plaintiff's business relationships with publishers and networks specializing in the adult paysite, adult cam, and adult dating website industry.

95.   Defendants intentionally and improperly interfered with Plaintiff's business relationships by contacting said businesses and asking them to no longer do business with or through Plaintiff.

96.   As a direct and proximate result of Defendants' interference with Plaintiff's business relationships, Plaintiff has been damaged in an amount to be proven at trial.

//

//

//

**SIXTH CLAIM FOR RELIEF**

**(Violation of RICO, 18 U.S.C. §§ 1962(c), (d)**

**Against All Defendants)**

97.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 67.

98.     This claim is brought under 18 U.S.C. § 1962(c), which is commonly known as the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

99.     Plaintiff is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

100.    Akhavan is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that he is an individual capable of holding a legal or beneficial interest in property.

101.    Levi is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that he is an individual capable of holding a legal or beneficial interest in property.

102.    Harklet is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

103.    Nunaton is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it an entity capable of holding a legal or beneficial interest in property.

104.    IBS is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

105.    Nautell is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that is an entity capable of holding a legal or beneficial interest in property.

106.    Cash Traffic is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

107.    Alacre is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

108.    Does 1 through 20, and each of them, are "person[s]" as that term is defined in 18 U.S.C. § 1961(3) in that each is a person or entity capable of holding a legal or beneficial interest in property.

109.   Akhavan, Levi, Harklet, Nunaton, IBS, Nautell, Cash Traffic, Alacre, and Does 1 through 20, and each of them, have, through their association with one another, formed an enterprise separate and apart from themselves and separate from the improper conduct alleged herein (the "Enterprise").  The Enterprise is an association-in-fact enterprise, as that term is referenced in 18 U.S.C. § 1961(4), in that it is a union or group of individuals associated in fact although not a legal entity.

110.   The Enterprise is engaged in, and its activities affect, interstate commerce in that through the Enterprise, Defendants, and each of them, operate a nationwide adult paysite, adult cam, and adult dating website business that advertises to and enters into financial transactions with consumers across the fifty (50) states and internationally.

111.   Through the Enterprise, Defendants, and each of them, have associated together for a common purpose of engaging in a course of conduct.  The common purpose is to evade liability to consumers, administrative and law enforcement agencies, and those with which they do business, such as Plaintiff, through the use of a complex web of domestic and foreign corporations through which liability and cash flow are untraceable.

112.   Defendants, and each of them, conducted and participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

113.   As specifically relates to Plaintiff, Defendants engaged in racketeering activity by violating 18 U.S.C. § 1343, the wire fraud statute, by contacting Plaintiff numerous times via interstate instant message and electronic mail and making false representations and concealments, including that Defendants were a single company named "CECash," and that Defendants intended to pay Plaintiff for the Referrals pursuant to the Agreement, in furtherance of Defendants' scheme to defraud Plaintiff into making the Referrals and thereby substantially increasing Defendants' profits.

//

//

114.   Plaintiff justifiably relied on Defendants' misrepresentations and concealments via interstate instant message and electronic mail as described above, to its detriment.

115.   Plaintiff has been directly and proximately injured in its business and property by Defendants' racketeering violations.  Specifically, Plaintiff has been deprived of millions of dollars of revenue owed to Plaintiff for the Referrals.

116.   Defendants' acts were a substantial cause of the injuries of Plaintiff and these injuries were reasonably foreseeable.

117.   Defendants had actual knowledge that their illegal acts were in violation of federal and California law.

118.   Under the provisions of 18 U.S.C. § 1964(c), Plaintiff is entitled to bring this action and to recover herein compensatory damages, treble damages, the costs of bringing this suit, and reasonable attorneys' fees.

### SEVENTH CLAIM FOR RELIEF
### (Conspiracy to Violate RICO
### Against Akhavan and Levi)

119.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 67 and 97 through 118.

120.   This claim is brought by Plaintiff alleging a cause of action under 18 U.S.C. § 1962(d) for conspiring to violate 18 U.S.C. § 1962(c).

121.   As alleged above in Plaintiff's Sixth Claim for Relief, Plaintiff, Defendants, and each of them is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that each is an individual or entity capable of holding a legal or beneficial interest in property.

122.   As alleged above in Plaintiff's Sixth Claim for Relief, the Enterprise is an association-in-fact enterprise, as that term is referenced in 18 U.S.C. § 1961(4), in that it is a union or group of individuals associated in fact although not a legal entity.

123.   As alleged above in Plaintiff's Sixth Claim for Relief, Defendants, and each of them, conducted and participated, directly or indirectly, in the conduct of the

1  Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §

2  1962(c).

3      124.  In violation of 18 U.S.C. 1962(d), the Individual Defendants, and each of

4  them, conspired to violate 18 U.S.C. § 1962(c) in that the Individual Defendants, and

5  each of them, embraced and agreed to participate in the illegal objective of the

6  Enterprise and the use of interstate wire communications to defraud Plaintiff.

7  **PRAYER FOR RELIEF**

8  **WHEREFORE**, Plaintiff respectfully requests judgment as follows:

9      1.  That the Court enter a judgment in favor of Plaintiff and against Defendants,

10  and each of them, finding that Defendants have:

11      a.  Breached the Agreement,

12      b.  Breached the implied covenant of good faith and fair dealing,

13      c.  Unjustly enriched themselves at Plaintiff's expense,

14      d.  Fraudulently induced Plaintiff to enter into the Agreement,

15      e.  Tortiously interfered with Plaintiff's business relationships,

16      f.  Violated RICO, 18 U.S.C. § 1962(c), and

17      g.  Conspired to violate RICO, in violation of 18 U.S.C. § 1962(d);

18      2.  That the Court award damages and monetary relief as follows:

19      a.  Damages of a compensatory and general nature, in an amount as

20      alleged and demanded above and according to proof at trial,

21      b.  Treble damages pursuant to 18 U.S.C. § 1964(c),

22      c.  Punitive damages, where applicable,

23      d.  Costs of suit, and

24      e.  Reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c); and

25  //

26  //

27  //

28  //

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1    3.    Such other relief that the Court determines is just and proper.

2

3    Respectfully Submitted,

4    DATED:  February 27, 2014                    **KRONENBERGER ROSENFELD, LLP**

5

6                                                By:    s/ Virginia Sanderson

7                                                        Virginia Sanderson

8                                                Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

**REQUEST FOR JURY TRIAL**

Plaintiff hereby demands a trial of this action by jury.

DATED:  February 27, 2014                **KRONENBERGER ROSENFELD, LLP**

By:   s/ Virginia Sanderson
                    Virginia Sanderson

Attorneys for Plaintiff



KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108