**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Virginia A. Sanderson (Bar No. 240241)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
ginny@KRInternetLaw.com

Attorneys for Plaintiff



KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**VERDE MEDIA CORP.** f/k/a The Verde Media Group, LLC, a Nevada corporation,

Plaintiff,

v.

**RON LEVI**, an individual; **ARDESHIR S. AKHAVAN**, an individual; **GUY MIZRACHI**, an individual; **KRISTI LUHAR**, an individual; **HARKLET ENTERPRISES, LTD.**, a Cyprus limited company; **NUNATON COMPANY, LTD.**, a Cyprus limited company; **INTERNET LIVE, LLC**, a California limited liability company; **INTERNET BRAND, LLC**, a California limited liability company; **INTERNET BUSINESS SERVICES, LLC**, a limited liability company of unknown origin; **NAUTELL CAPITAL LTD.**, a Cyprus limited company; **CASH TRAFFIC LTD.**, a limited company of unknown origin; **ALACRE TRADING LTD.**, a Cyprus limited company; and **DOES 1-20**,

Defendants.

Case No. 4:14-cv-00891-YGR

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

Plaintiff Verde Media Corp., a Nevada corporation ("Plaintiff"), by and through its undersigned counsel, states and alleges as follows:

## NATURE OF THE ACTION

1. This action alleges breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, fraudulent inducement, tortious interference with business relationship, and violations of the federal Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., on behalf of Plaintiff Verde Media Corp. ("Plaintiff"), and against Ron Levi ("Levi"), Ardeshir S. Akhavan ("Akhavan"), Guy Mizrachi ("Mizrachi"), Kristi Luhar ("Luhar"), Harklet Enterprises Ltd. ("Harklet"), Nunaton Company Ltd. ("Nunaton"), Internet Live, LLC ("IL"), Internet Brand, LLC ("IB") Internet Business Services, LLC ("IBS"), Nautell Capital Ltd. ("Nautell"), Cash Traffic Ltd. ("Cash Traffic"), and Alacre Trading Ltd. ("Alacre"), together with certain named and as yet unnamed employees, directors, agents, co-conspirators, and aiders and abettors (collectively, "Defendants").

2. Plaintiff alleges that Levi, Akhavan, Mizrachi, and Luhar (collectively, the "Individual Defendants"), own and operate a complex collection of domestic, foreign, and international corporate entities, including without limitation Harklet, Nunaton, IL, IB, IBS, Nautell, Cash Traffic, and Alacre (collectively, the "Corporate Defendants"), with the express intent of obfuscating the corporate structure thereof and evading liability to consumers, administrative and law enforcement agencies, and those with which they do business, such as Plaintiff. Plaintiff further alleges that, under the umbrella of this corporate web, Defendants engaged in a pattern of deceptive practices, including fraud, to mislead Plaintiff into brokering key relationships for Defendants, resulting in tens of millions of dollars of Internet traffic being driven to Defendants' adult and dating websites, and millions of dollars in damages to Plaintiff when Defendants first avoided, and later flatly refused, payment of the broker commissions owed to Plaintiff.

3. This action seeks damages, including treble and punitive damages, redress of injuries, attorneys' fees and costs, and other relief, all arising out of Defendants' breach

KRONENBERGER ROSENFELD 150 Post Street, Suite 520, San Francisco, CA 94108

of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, fraudulent inducement, tortious interference with Plaintiff's business relationships, false advertising, and violations of RICO.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction of Plaintiff's RICO claim pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) (civil remedies for RICO violations).

5. This Court has subject matter jurisdiction of Plaintiff's Lanham Act claim pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1125(a).

6. This Court has supplemental jurisdiction of Plaintiff's claims brought under the laws of the State of California pursuant to 28 U.S.C. § 1367(a) in that Plaintiff's state law claims are so related to the RICO claim raised in this Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper under 28 U.S.C. § 1391 because many of the incidents, events, or omissions complained of and giving rise to the instant claims and controversy occurred within the State of California and the parties, and each of them, have agreed through counsel that this Court is a proper Venue.

8. This Court has personal jurisdiction over Defendant Levi because, on information and belief, he is a resident of the State of California.

9. This Court has personal jurisdiction over Defendant Akhavan because, on information and belief, he is a resident of the State of California.

10. This Court has personal jurisdiction over Defendant Mizrachi because, on information and belief, he is a resident of the State of California.

11. This Court has personal jurisdiction over Defendant Luhar because, on information and belief, she is a resident of the State of California.

12. This Court has personal jurisdiction over Defendant Harklet because, on information and belief, its principal place of business is located in Calabasas, California.

13. This Court has personal jurisdiction over Defendant Nunaton because, on information and belief, its principal place of business is located in Calabasas, California.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

14. This Court has personal jurisdiction over Defendant IL because it is a California limited liability company with its principal place of business located in Calabasas, California.

15. This Court has personal jurisdiction over Defendant IB because it is a California limited liability company with its principal place of business located in Calabasas, California.

16. This Court has personal jurisdiction over Defendant IBS because, on information and belief, its principal place of business is located in Calabasas, California.

17. This Court has personal jurisdiction over Defendant Nautell because, on information and belief, its principal place of business is located in Calabasas, California.

18. This Court has personal jurisdiction over Defendant Cash Traffic because, on information and belief, its principal place of business is located in Calabasas, California.

19. This Court has personal jurisdiction over Defendant Alacre because, on information and belief, its principal place of business is located in Calabasas, California.

## INTRADISTRICT ASSIGNMENT

20. By agreement of the parties, this action should be assigned to the San Francisco Division or the Oakland Division.

## PARTIES

21. Plaintiff Verde Media Corp. is a Nevada corporation with its principal place of business located in Clearwater Beach, Florida. Plaintiff was formerly known as The Verde Media Group, LLC, a California limited liability company formed on August 10, 2011. On or about January 10, 2014, Verde Media Corp. was formed and assumed all of the rights and obligations of its predecessor-in-interest, The Verde Media Group, LLC, including all rights to enforce the Agreement as alleged herein.

22. On information and belief, Defendant Ron Levi is an individual residing in Calabasas, California.

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

23. On information and belief, Defendant Ardeshir S. Akhavan is an individual residing in Agoura Hills, California.

24. On information and belief, Defendant Guy Mizrachi is an individual residing in Agoura Hills, California.

25. On information and belief, Defendant Kristi Luhar is an individual residing in Canoga Park, California.

26. On information and belief, Defendant Harklet Enterprises Ltd. is a limited corporation formed under the laws of Cyprus. On information and belief, Harklet's Cyprus address is used for registration and mail-forwarding purposes only, and the vast majority of Harklet's business operations take place at 5146 Douglas Fir Road, Calabasas, California.

27. On information and belief, Defendant Nunaton Company Ltd. is a limited corporation formed under the laws of Cyprus. On information and belief, Nunaton's Cyprus address is used for registration and mail-forwarding purposes only, and the vast majority of Nunaton's business operations take place at 5146 Douglas Fir Road, Calabasas, California.

28. On information and belief, Defendant Internet Live, LLC is a limited liability company formed under the laws of the State of California. The address of IL's principal place of business, as listed with the Secretary of State, is 5146 Douglas Fir Road, Calabasas, California.

29. On information and belief, Defendant Internet Brand, LLC is a limited liability company formed under the laws of the State of California. The address of IB's principal place of business, as listed with the Secretary of State, is 5146 Douglas Fir Road, Calabasas, California.

30. On information and belief, Defendant Internet Business Services, LLC is a limited liability company formed under the laws of a state unknown to Plaintiff at this time. Notably, IBS has filed documents in this Court under the name of "Defendant Internet Business Services, LLC." However, IBS may also be a fictitious business name used by

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

Defendants IB and IL. On information and belief, the vast majority of IBS's business operations take place at 5146 Douglas Fir Road, Calabasas, California.

31. On information and belief, Defendant Nautell Capital, Ltd. is a limited corporation formed under the laws of Cyprus. On information and belief, Nautell's Cyprus address is used for registration and mail-forwarding purposes only, and the vast majority of Nautell's business operations take place at 5146 Douglas Fir Road, Calabasas, California.

32. On information and belief, Defendant Cash Traffic, Ltd. is a limited corporation formed under the laws of a foreign jurisdiction unknown to Plaintiff at this time. On information and belief, the vast majority of Cash Traffic's business operations take place at 5146 Douglas Fir Road, Calabasas, California.

33. On information and belief, Defendant Alacre Trading Ltd. is a limited corporation formed under the laws of Cyprus. On information and belief, Alacre's Cyprus address is used for registration and mail-forwarding purposes only, and the vast majority of Alacre's business operations take place at 5146 Douglas Fir Road, Calabasas, California.

34. On information and belief, and at all relevant times, Defendants Levi, Akhavan, Mizrachi, and Luhar have been employees, officers, directors, agents and/or representatives of the Corporate Defendants and conspired to commit the wrongful acts alleged herein and are jointly and/or severally liable for the wrongful acts alleged herein.

35. Defendants DOES 1-20 (the "Doe Defendants") are as yet to be identified officers, employees, agents, co-conspirators, and/or aiders and abettors of Defendants. Upon further discovery, and when the relevant information has been obtained, Plaintiff will seek to amend this Complaint to state the true names and capacities of the Doe Defendants.

//

//

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### Plaintiff and Plaintiff's Business

36. Plaintiff is a broker of Internet traffic specializing in the adult paysite, adult webcam (referred to within the industry as "cam"), and adult dating industries.

37. As an Internet traffic broker, Plaintiff has expended substantial time and resources developing key relationships with a roster of website and blog owners—known in the industry as "publishers" or "affiliates." Plaintiff has also developed key relationships with so-called "ad networks" or "affiliate networks," which are companies that aggregate hundreds or even thousands of publishers, thereby substantially reducing the number of persons and entities that the advertiser client has to personally manage.

38. The directed flow of consumers from publisher to advertiser is commonly referred to within the business as Internet "traffic" or "leads," dependent on the type of action or information ultimately sought from the consumer.

39. The adult paysite, adult cam, and adult dating industries are highly specialized, and only a handful of brokers have developed as many key contacts as Plaintiff has with its roster of publishers and networks who have demonstrated measurable success in driving Internet traffic within this industry.

40. Plaintiff's clients are the owners and operators of adult-themed websites and adult dating websites, and are referred to within the industry as "advertisers."

41. Plaintiff provides its brokerage services by referring key publishers or networks to advertisers.

42. Like brokers in a variety of industries, Plaintiff is compensated for its services through payment of a broker or referral fee. Specifically, Plaintiff's advertiser clients generally pay Plaintiff a commission between five dollars ($5) and ten dollars ($10) for each sale or other financial transaction completed by a consumer with the advertiser as a result of the referral.

43. Adult paysite, adult cam, and adult dating websites can be extremely lucrative if the websites are advertised to the right consumers. A single referral from

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

Plaintiff can result in tens of millions of dollars in traffic to a particular advertiser, in which case, Plaintiff is owed and paid millions of dollars in broker fees over the life of the referral relationship.

**Defendants and Defendants' Businesses**

44. Defendants own and operate several lucrative adult paysites, adult cam, and adult dating websites.

45. In relevant part, the Individual Defendants and Harklet own and operate the website located at <cecash.com>[1] (the "CECash Website"). The CECash Website serves as a portal for publishers and networks driving traffic to other websites owned and operated by Defendants. The homepage of the CECash Website states:

> Over 50 New sites to promote! New marketing tools! New User Friendly Stats Interface! The all new Cecash [sic] 3.0 is all about making YOU more money! For 11 years, we have strived to create innovative sites and products to diversify your income and make your traffic convert. After 11 years, 2 billion surfers, 6.9 million members, and over $105,000,000 dollars in webmaster payouts, we are happy to present you with the all new CECash 3.0!

46. On the "Adult Webmaster Affiliate Program Terms and Conditions" page of the CECash Website, the terms identify the owner of the website as "Harklet Enterprises, Limited., doing business as, CECash.com [all sic]."

47. In relevant part, Plaintiff is also informed and believes that the Individual Defendants and Nunaton own and operate the website located at <cashtraffic.com> (the "Cash Traffic Website"). Like the CECash Website, the Cash Traffic Website also serves as a portal for publishers and networks driving traffic to other websites owned and operated by Defendants.

48. On the "Adult Webmaster Affiliate Program – Terms and Conditions" page of the Cash Traffic Website, the terms identify "Nunaton Company Ltd, doing business as, CashTraffic.com [all sic]" as the owner of the Cash Traffic Website.

---

[1] As a courtesy to the Court, Plaintiff warns that most, if not all, of the websites referenced herein contain graphic adult content.

KRONENBERGER ROSENFELD 150 Post Street, Suite 520, San Francisco, CA 94108

49. In relevant part, Plaintiff is also informed and believes that the Individual Defendants and Alacre own and operate the website located at <iballers.com> (the "iBallers Website"). The iBallers Website also serves as a portal for publishers and networks driving traffic to other websites owned and operated by Defendants.

50. While the "Terms and Conditions" page of the iBallers Website does not expressly identify an owner of the Website, it does refer persons making claims of copyright infringement to its copyright agent at legal@alacretrading.com. Accordingly, Plaintiff is informed and believes that the iBallers Website is owned and/or operated by Alacre in conjunction with the Individual Defendants.

51. In relevant part, Plaintiff is also informed and believes that the Individual Defendants and Nautell own and operate the website located at <citysex.com> (the "City Sex Website"). The City Sex Website is an adult dating website.

52. On the "CitySex Terms of Use Agreement" page of the City Sex Website, the terms identify Nautell Capital Limited as the "operator" of the Website.

53. On information and belief, IBS is the entity used by Defendants to lease Defendants' office space located at 5146 Douglas Fir Road, Calabasas, California, and to hire many of the employees working for the benefit of all Defendants.

54. The websites and business entities referenced above in Paragraphs 44 through 53 are just a small portion of the websites and corporations owned, operated, and/or affiliated with Defendants. For example, the Cash Traffic Website lists several other websites as one of "our websites," each of which is affiliated with different corporate entities via its website terms and domain registration, as listed in the WHOIS database:

| **Website Name** | **Affiliated Corporation (Terms)** | **Affiliated Corporation (WHOIS)** |
|---|---|---|
| <lifetimelesbianpass.com> | Dunkirk Enterprises Ltd. (UK) | Demurrelt Enterprises Ltd. (Cyprus) |
| <lifetimeblackpass.com> | Dunkirk Enterprises Ltd. (UK) | Demurrelt Enterprises Ltd. (Cyprus) |
| <freelifetimeteen.com> | Tejas Enterprises Ltd. (UK) | (privacy protected) |

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

| <freelifetimeamateurs.com> | Newgrange Trading Ltd. (UK) | (privacy protected) |
|---|---|---|
| <freelifetimepov.com> | Newgrange Trading Ltd. (UK) | (privacy protected) |
| <freelifetimepornstars.com> | Arcadiam Trading Ltd. (UK) | (privacy protected) |
| <freelifetimehentai.com> | Bazan Trading Ltd. (UK) | (privacy protected) |
| <lifetimetrannypass.com> | Harlem Goal Investments Ltd. (UK) | Demurrelt Enterprises Ltd. (Cyprus) |
| <lifetimeboobiespass.com> | Vago Trading Ltd. (UK) | Demurrelt Enterprise Ltd. (Cyprus) |
| <lifetimeanalpass.com> | Blackball Entertainment Ltd. (Cyprus) | Demurrelt Enterprise Ltd. (Cyprus) |
| <freelifetimemilfpass.com> | Renaud Enterprises Ltd. (UK) | Demurrelt Enterprise Ltd. (Cyprus) |

55. Plaintiff is informed and believes that Defendants own and operate over 50 publisher portal, adult entertainment, and dating websites through numerous entities.

56. Plaintiff is informed and believes that the Individual Defendants have formed and operate numerous corporate entities, both in the United States and abroad, as a means of fraudulently concealing from Defendants' consumers, business partners, and others—including administrative and law enforcement agencies—that the Individual Defendants are responsible, and therefore liable, for the content and business practices on and/or related to Defendants' websites.

57. Plaintiff is informed and believes that, at all relevant times, Levi and Luhar have provided the financial backing for, and derived the principal financial benefit from, the numerous corporate entities that are related to Defendants and their websites. Indeed, over 65 U.S. corporations and limited liability companies, including ones formed in California and Nevada, have listed either Levi or Luhar as an owner or principal during their corporate lifetime, which is often very short.

58. In addition to these U.S. corporate entities, Plaintiff is informed and believes that Levi and Luhar have registered, or caused to be registered, numerous companies abroad, including in the United Kingdom and Cyprus, as referenced in this Complaint.

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108



Plaintiff is informed and believes that Levi and Luhar registered companies in international jurisdictions with the specific intent of further concealing the true ownership of the Corporate Defendants and Defendants' websites and thereby evading liability for Defendants' deceptive business practices and other misconduct.

59. Plaintiff is informed and believes that Akhavan is in charge of technical operations for Defendants' business and, as such, has substantial decision-making authority, including with respect to staffing, advertising agreements, and payments to third-party affiliates and brokers.

60. Plaintiff is informed and believes that Mizrachi is in charge of legal operations for Defendants' business and, as such, has substantial decision-making authority, including with respect to corporate structure, corporate documents, corporate lease or other realty agreements, and the legal relationship of each Defendant to the others.

**The Parties' Agreement and Defendants' Breach**

61. On or about November 6, 2012, Defendants, under the guise of a single business entity doing business as "CECash," entered into an agreement with Plaintiff for the referral of Internet traffic to Defendants' adult websites, including adult paysites and adult dating websites (the "Agreement").

62. The terms of the Agreement were decided in two forums: (1) at an in-person meeting between Plaintiff's principal, Jeremy Greene ("Greene"), on the one hand, and Akhavan, as a representative of Defendants, on the other, and (2) in a series of Skype instant messaging exchanges between Greene and Akhavan (the "IMs"). Although many of the terms of the Agreement were memorialized in writing via the IMs, the Agreement, as a whole, was never reduced to a single writing.

63. The in-person meet referenced in the preceding paragraph took place at the office located at 5146 Douglas Fir Road, Calabasas, California. Akhavan, on behalf of Defendants, represented to Plaintiff that the Douglas Fir Road location was the principal place of business of "CECash."

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

64. The IMs were transmitted via interstate wire in that, for the most part, they were exchanged between Akhavan, who was in California, and Greene, who was in Florida and other states at the time of transmission.

65. The terms of the agreement were as follows:

a. Plaintiff agreed to refer publishers and networks to Defendants (the "Referrals");

b. Defendants agreed to pay Plaintiff $5,000 upfront to get the Referral publishers and networks up and running with respect to their advertising for Defendants;

c. Defendants further agreed to pay Plaintiff $10 for each financial transaction resulting from traffic driven to Defendants by the Referrals; and

d. Plaintiff and Defendants further expressly agreed that the Agreement, and Defendants' payment obligations, would extend to Referrals of new publishers and networks to Defendants as well as publishers and networks that had previously enrolled with Defendants, but were not actively driving substantial traffic to Defendants at the time of the Referral.

66. Throughout the IMs and other electronic communications with Plaintiff, Akhavan, on behalf of Defendants, fraudulently concealed and misrepresented the true identity of Defendants by misrepresenting that Defendants were a single entity known as "CECash." Thus, each fraudulent IM transmitted to Plaintiff by Defendants via interstate wire constituted an act of wire fraud.

67. The following are just a few specific examples of fraudulent IM transmissions from Defendants to Plaintiff:

a. On November 6, 2012, Akhavan, on behalf of Defendants, and using the Skype handle "CERD" [which is referential to both "CECash" and Akhavan's nickname, Ardy, or "RD"] sent an IM to Plaintiff representing that Defendants were in need of "marketing people, but also good ole fashioned sales people / brokers etc." At the time, Plaintiff reasonably relied on this statement in

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

entering into the brokerage Agreement with Defendants. Later, Plaintiff discovered that this statement was knowingly false at the time it was made because Akhavan indicated Defendants had no intention of paying a broker.

b. In a later IM exchange on November 6, 2012, Akhavan, on behalf of Defendants, and using the Skype handle "CERD," represented to Plaintiff that, under the agreement, Plaintiff was free to refer existing publishers to Defendants if the publishers were, at the time, not really doing any business with Defendants. Plaintiff asked "is someone working with [Referral] or can I get him going?" and Defendants responded "no, you can get him going." Regarding a second Referral who was an existing publisher, Defendants represented to Plaintiff that "we don't really do anything with [second Referral] either . . . so get [second Referral] going if you can and [first Referral]." At the time, Plaintiff reasonably relied on these statements in working with the first and second Referrals to generate business for Defendants. Later, Plaintiff discovered that these statements were knowingly false at the time they were made because Defendants refused to pay Plaintiff under the Agreement for activating existing publishers.

c. In a later IM exchange on November 6, 2012, Akhavan, on behalf of Defendants, and using the Skype handle "CERD," represented to Plaintiff that, under the Agreement, Plaintiff would be paid a $10 referral fee per sale. Plaintiff asked, "just so i know what to base the invoice off of, once volume is up, what per sale will I get? I usually get like $10/sale." Defendants responded, "we usually do 10% of payout / so [we] can do 10$." At the time, Plaintiff reasonably relied on Defendants' representation that they would pay $10 per sale in entering into the Agreement and performing Plaintiff's obligations thereunder. Later, Plaintiff discovered that these statements were knowingly false at the time they were made because

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

Defendants refused to pay Plaintiff $10 per sale and denied that any such Agreement existed.

68. In addition to the foregoing representations, in the IMs and other wire transmissions, Akhavan also repeatedly represented that he worked for a company called "CECash." While Akhavan did not disclose it at the time, Plaintiff is now informed and believes that CECash is a fictitious business name used by Harklet and numerous corporate entities owned and operated by Defendants.

69. Pursuant to the Agreement, on or about November 8, 2012, Defendants wired $5,000 to Plaintiff. According to Plaintiff's bank statement, the wire was sent by Cash Traffic.

70. Pursuant to the Agreement, Plaintiff made numerous Referrals to Defendants. In making these Referrals, Plaintiff expended time and effort complying with the demands of Defendants in registering the Referral publishers and networks with Defendants' websites, including the CECash Website, the Cash Traffic Website, and the iBallers Website. Plaintiff also assisted in setting up the Referral publishers and networks to send traffic to Defendants' websites, to track said traffic, and to receive payment from Defendants.

71. On information and belief, Plaintiff's Referrals have resulted in millions of dollars of consumer sign-ups and other financial transactions for Defendants.

72. Yet despite the profitable nature of the Referrals, and Defendants' benefit therefrom, Defendants have failed and refused to pay Plaintiff for anything other than the initial $5,000 fee.

73. Indeed, in direct contradiction to his earlier statements in the IMs promising to pay Plaintiff for the Referrals, Akhavan, in a September 24, 2013 email to Greene, stated "Go find a real job instead of being a little whiney broker, do something of value and perhaps you will earn value."

74. Plaintiff is now informed and believes that Defendants have formed and operate numerous corporate entities, both in the United States and abroad, as a means of

fraudulently concealing from Defendants' consumers, business partners, and others—including Plaintiff—the true identities of those responsible, and therefore liable, for the content and business practices on and/or related to Defendants' websites.

75. Plaintiff is informed and believes that Defendants' complex corporate structure, which includes entities of unknown origin (such as Cash Traffic Ltd.) and entities registered in international jurisdictions such as Cyprus, has caused Defendants to believe they are "judgment-proof." It is this belief that gave Defendants, including Akhavan, the brash confidence to openly renege on the Agreement to pay Plaintiff for the Referrals.

76. As a result of Defendants' misconduct, Plaintiff has been harmed and continues to be harmed. Plaintiff estimates that, under the Agreement, Defendants will owe Plaintiff over $5 million through the end of 2014, with the amount growing exponentially thereafter.

**Defendants' Illegal Transfer and Sale of Consumer Financial Information**

77. One crucial part of Defendants' corporate structure, which is designed to evade liability in the United States, is Defendants' use of foreign banks and financial institutions to process debit and credit card transactions on Defendants' websites.

78. On information and belief, the use of foreign financial institutions allows Defendants to conceal the existence of and/or obstruct the collection of Defendants' money from civil litigants and U.S. taxation and investigative authorities. As such, the use of foreign financial institutions is an important part of Defendants' fraudulent scheme.

79. On information and belief, many of Defendants' U.S. customers pay for products and services on Defendants' websites using debit and credit cards issued by U.S. financial institutions.

80. On information and belief, many U.S. financial institutions decline charges to consumer debit and credit cards by foreign financial institutions for several reasons, including without limitation: (1) little or no history of foreign charges to the particular consumer's account, (2) an unacceptable historical rate of fraudulent transactions by the

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

particular foreign financial institution, or (3) a general policy disfavoring charges from certain foreign jurisdictions.

81. In the merchant processing industry, the collective batch of consumer financial transactions that are declined by the issuers of the debit and credit cards used is called "decline traffic."

82. On information and belief, Defendants' use of foreign financial institutions results in an above-average rate of decline traffic for the transactions processed through Defendants' websites.

83. On information and belief, Defendants have attempted to turn the proverbial lemons into lemonade by fraudulently and illegally selling Defendants' decline traffic to third parties in the adult industry who use U.S. financial institutions to process debit and credit card transactions.

84. The following hypothetical example illustrates how Defendants' scheme works:

    a. A consumer registers for Defendants' website, and agrees to pay a monthly membership fee. The consumer pays for the membership fee using a credit card issued by a U.S. financial institution, such as Bank of America.

    b. Defendants' foreign merchant processor attempts to process the transaction for consumer, but the use of a foreign merchant processor trips Bank of America's fraud protection protocol. Bank of America declines the transaction.

    c. Defendants' sell the consumer's financial information—including the consumer's name, billing address, credit card number, expiration date and security code—as part of a batch of decline traffic to a third-party business that also sells adult products and services online.

    d. The third-party business uses a U.S. merchant processor. Thus, Defendants and the third-party business have good reason to believe that when the third-party business runs the consumer's credit card, Bank of

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

America will approve the transaction because no foreign merchant processor is being used.

e. To be clear, the third-party is running the consumer's credit card for a product or service that the consumer has no knowledge of, and certainly has not consented to purchase. Thus, Bank of America is approving the transaction based on a false representation by the third party, via the consumer's billing and account information, that the consumer has consented to the charge.

f. As a result of the sale, Defendants make money off the consumer even though the initial transaction was declined. Meanwhile, the third-party business gains an unwitting customer and may continue to add charges to the consumer's account at its will.

g. It may take the consumer several months—and hundreds of dollars—to detect that the charges to his account are for a different adult website than that with which he registered. When he does, he will likely respond by asking Bank of America to bar further charges, but will have to pay for those already incurred.

h. Because the fraudulent charges at issue concern purchases for adult products and services, the consumer is not likely to take legal action, file a complaint with the Better Business Bureau, a state attorney general, or the Federal Trade Commission, or otherwise "go public" with his complaint. As a result, Defendants are able to continue their unlawful and fraudulent scheme without fear of prosecution.

85. In addition to other laws, Defendants' sale and transfer of consumer financial information to a third party without the consumer's prior express consent is a clear violation of the Restore Online Shoppers' Confidence Act, or "ROSCA," 18 U.S.C. 8400 et seq.

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

86.     Defendants have admitted their sale of decline traffic to Plaintiff and even offered to sell some decline traffic to Plaintiff's principal, Greene.

87.     On July 23, 2013, via Skype instant messaging exchange, Akhavan, on behalf of Defendants [and using the Skype handle "CERD," which refers to CECash], told Greene that "i may be able to send you guys some good decline [traffic]," and admitted that "since we process all offshore we have about 200 sales a day that we can't accept[.] i usually just send these to [third-party name redacted]."

88.     The following is a screenshot of Defendants' July 23, 2013 Skype instant message, with third-party information redacted:



89.     Defendants' unlawful conduct has many victims.  The consumers whose financial information is transferred without their knowledge or consent are damaged. Similarly, the U.S. financial institutions that approve the charges submitted by the third parties on the false pretense that the consumer consented to such charges are also damaged.

90.     Plaintiff has also been damaged by Defendants' scheme of using foreign processors and later sale of decline traffic.

91.     Specifically, Defendants admit that they lose hundreds of sales a day as a direct result of their use of foreign processors.  These are transactions that, but for

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

Defendants' use of foreign processors, would have been approved—and for which Plaintiff would have been paid under the Agreement.

92. Thus, by using foreign processors and selling the resulting decline traffic to third parties, Defendants are circumventing the Agreement—and payment of amounts owed to Plaintiff thereunder—for hundreds of sales a day.

93. As a result of Defendants' misconduct, Plaintiff has been harmed and continues to be harmed.

**Defendants' False Advertising, Interference with Plaintiff's Business Relationships and Witness Tampering**

94. Plaintiff is informed and believes that Akhavan, on behalf of Defendants, has contacted several of the Referral publishers and networks and encouraged them to no longer do business with Plaintiff.

95. For example, on September 24, 2013, Akhavan, acting on behalf of Defendants, contacted the principal of one of the largest Referral networks and said, regarding Greene (and therefore Plaintiff), "I would like it if you guys can tell him you will no longer be working with him."

96. On information and belief, Defendants have contacted other Referrals and similarly asked or demanded that the Referrals cease doing business with Plaintiff.

97. On information and belief, Defendants have also made false statements of fact to Plaintiff's clients, including the Network, including by way of example:

a. That the Agreement did not exist;

b. That Defendants did not agree to pay Plaintiff any Referral fees for activating publishers or networks, including the Network, that had previously registered with Defendants but were not driving any significant traffic prior to Plaintiff's Referral; and

c. That Plaintiff had done nothing warranting payment regarding the Referrals.

//

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

98. On information and belief, some of Plaintiffs' clients, including the Network, accepted Defendants' false statements as true and, as a result, ceased doing business with Plaintiff.

99. Plaintiff filed its original complaint in the above-entitled action on February 27, 2014.

100. Plaintiff's original complaint included the allegations related to the Agreement, the existence of Referrals, and that Akhavan had contacted the principal of one of the largest Referral networks and demanded that it cease doing business with Akhavan. Accordingly, as of February 27, 2014, Defendants knew or had reason to know that the large Referral network referenced in the original complaint (the "Network"), including its officers, employees, and consultants, were potential witnesses to Plaintiff's claims.

101. The Phoenix Forum, a trade convention for the adult dating, paysite, and camsite industry (the "Forum"), was held at the Tempe Mission Palms Hotel in Tempe (the "Mission Palms"), Arizona on March 27 through March 29, 2014.

102. At the time of the filing of the original complaint, Defendants knew that both Plaintiff and the Network were planning on attending the Forum. In fact, Plaintiff had booked a table at a nightclub for one night during the Forum for a pre-arranged meeting with the Network and three other businesses (the "Meeting"). At the meeting, Plaintiff intended to broker deals between the Network and each of the businesses that would result in future Referral income for Plaintiff, and the Network was aware of this intent.

103. On information and belief, by late February 2014, the Network's representatives were planning on staying at the Aloft Tempe Hotel during the Forum and had already booked their hotel reservations.

104. On information and belief, in early March 2014—shortly after the original complaint had been filed, and only a few weeks before the Forum—Defendants contacted the Network and offered to pay for the Network's representatives to stay in a luxury suite at the W Hotel in Scottsdale for the duration of the Forum. On information and belief, the

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

Network's representatives accepted the offer and canceled their reservations at the Mission Palms. On information and belief, Defendants also treated the Network to exclusive meals and events during the Forum.

105. On information and belief, Defendants provided luxury accommodations for the Network during the Forum, and have lavished other benefits on the Network and its representatives, in an effort to corruptly persuade the Network and its representatives—e.g., witnesses to this action—with the intent to influence their testimony in the action.

106. On information and belief, Defendants have succeeded in their efforts to corruptly persuade the Network and its representatives to change or alter, or otherwise cast in a light more favorable to Defendants than the truth, their testimony in the action in that at least one purported representative of the Network has provided, upon Defendants' request, sworn testimony that knowingly misrepresents pertinent facts.

107. On information and belief, Defendants also provided luxury accommodations for the Network during the Forum, and have lavished other benefits on the Network and its representatives, in order to convince the Network to cease doing business with Plaintiff.

108. On information and belief, Defendants have succeeded in their attempts to frustrate Plaintiff's business relationship with the Network.

109. For example, when Plaintiff attempted to contact the Network during the Forum to solidify their plans for the Meeting, the Network informed Plaintiff that it was unable to attend the Meeting because it was at an expensive event with Defendants. As a result, Plaintiff was unable to broker the deals between the Network and the other businesses at the Meeting.

110. As a further example, although Plaintiff and the Network were discussing several proposed business opportunities prior to the filing of this lawsuit, since the Forum, Plaintiff has been unable to get Network to move forward on any of the previously-discussed business opportunities.

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

111. As a result of Defendants' misconduct, Plaintiff has been harmed and continues to be harmed.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract**

**Against All Defendants)**

112. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 111.

113. The Agreement is a valid and enforceable contract between Plaintiff, on the one hand, and Defendants, on the other, and is supported by valuable consideration.

114. Plaintiff has fulfilled all of its obligations under the Agreement.

115. Defendants have materially breached, and continue to breach, the Agreement by failing to honor its terms, including by failing to pay Plaintiff amounts owed pursuant to the Agreement.

116. As a direct and proximate result of Defendants' material breaches of the Agreement, Plaintiff has been damaged in an amount exceeding $5 million and to be proven at trial.

**SECOND CLAIM FOR RELIEF**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing**

**Against All Defendants)**

117. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 116.

118. The Agreement is a valid and enforceable contract between Plaintiff, on the one hand, and Defendants, on the other, and is supported by valuable consideration.

119. Plaintiff has fulfilled all of its obligations under the Agreement.

120. Defendants have unfairly and intentionally interfered with Plaintiff's rights to receive the benefits of the Agreement, including by refusing to pay Plaintiff amounts owed pursuant to the Agreement.

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

121. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing appurtenant to the Agreement, Plaintiff has been damaged in an amount exceeding $5 million and to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**(Unjust Enrichment/Restitution**

**Against All Defendants)**

122. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 111.

123. Plaintiff asserts this claim <u>in the alternative</u> to the First and Second Claims for Relief.

124. Defendants have been enriched by their receipt of and benefit from the time, effort, and connections of Plaintiff in making the Referrals to Defendants and setting up the Referral publishers and networks with Defendants' websites and tracking and payment platforms so that the Referral publishers and networks could drive traffic to Defendants' websites.

125. Likewise, Plaintiff has been impoverished by the time and effort it has contributed to making the Referrals and getting the Referred publishers and networks up and running without receiving payment in return from Defendants.

126. A causal relationship exists between Defendants' enrichment and Plaintiff's impoverishment in that Plaintiff's impoverishment is directly and proximately caused by Defendants' wrongful and unjust refusal to pay Plaintiff for the benefits conferred on Defendants.

127. Defendants have no reasonable justification for their failure to compensate Plaintiff for the enrichment they have received.

128. Plaintiff lacks an adequate remedy provided by law and therefore seeks restitution for Defendants' unjust and unlawful conduct, in an amount exceeding $5 million to be proven at trial.

//

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

**FOURTH CLAIM FOR RELIEF**

**(Fraudulent Inducement**
**Against All Defendants)**

129. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 111.

130. Beginning on or about November 6, 2012, and continuing through September 2013, Akhavan, on behalf of Defendants, knowingly made false misrepresentations to Plaintiff in the process of negotiating the terms of the Agreement and convincing Plaintiff to provide additional Referrals under the Agreement. Specifically, Akhavan represented that:

a. Defendants were a single company called "CECash";

b. Defendants intended to pay Plaintiff a fee for all income earned by Defendants as a result of the Referrals, pursuant to the Agreement; and

c. Defendants would compensate Plaintiff not only for Referrals of new publishers and networks, but also those publishers and networks that had previously enrolled with Defendants, but were not actively driving substantial traffic to Defendants at the time of the Referral.

131. Defendants knew that the foregoing misrepresentations were false when made and that Defendants intended to pay Plaintiff no money other than the initial $5,000 fee.

132. Defendants intended to induce reliance by Plaintiff on the misrepresentations. Specifically, Defendants intended to induce Plaintiff to enter into the Agreement and provide profitable Referrals and/or activate existing Referrals that Defendants, on their own, had been unable to activate.

133. Plaintiff justifiably relied on Defendants' misrepresentations and, as a result of said reliance, entered into the Agreement and provided the Referrals, including by activating existing publishers and networks so that, within a very short period of time from

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

Plaintiffs' involvement said publishers and networks were driving a huge and profitable amount of traffic to Defendants and their websites.

134. Plaintiff did not discover the false nature of Defendants' misrepresentations or omissions until September 2013, when Akhavan, on behalf of Defendants, flatly refused to pay Plaintiff any amounts owed under the Agreement.

135. As a direct and proximate result of Defendants' misrepresentations, Plaintiff has suffered damages of at least $5 million and according to proof at trial.

136. Defendants' misrepresentations to Plaintiff, as set forth above, were made purposefully, with fraudulent intent, and without regard for the rights and interests of Plaintiff, thereby entitling Plaintiff to an award of exemplary and punitive damages as to Defendants in an amount sufficient to deter their wrongful conduct.

**FIFTH CLAIM FOR RELIEF**

**(Tortious Interference with Existing and Prospective Business Relationships Against All Defendants)**

137. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 111.

138. Plaintiff, as a broker of Internet traffic, has existing and prospective business relationships with a number of publishers and networks specializing in the adult paysite, adult cam, and adult dating website industry.

139. At all times relevant, Defendants knew of Plaintiff's existing and prospective business relationships with publishers and networks specializing in the adult paysite, adult cam, and adult dating website industry.

140. Defendants intentionally and improperly interfered with Plaintiff's existing and prospective business relationships by contacting said businesses and asking them to no longer do business with or through Plaintiff.

141. Defendants further intentionally and improperly interfered with Plaintiff's existing and prospective business relationships by lavishing them with gifts, including by

KRONENBERGER ROSENFELD 150 Post Street, Suite 520, San Francisco, CA 94108

paying for the lodging of at least one Network at the Forum to prevent the Network from meeting with Plaintiff at the Forum and exploring future business opportunities.

142. As a direct and proximate result of Defendants' interference with Plaintiff's business relationships, Plaintiff has been damaged in an amount to be proven at trial.

**SIXTH CLAIM FOR RELIEF**

**(Violation of RICO, 18 U.S.C. §§ 1962(c), (d)**

**Against All Defendants)**

143. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 111.

144. This claim is brought under 18 U.S.C. § 1962(c), which is commonly known as the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

**<u>The Persons</u>**

145. Plaintiff is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

146. Akhavan is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that he is an individual capable of holding a legal or beneficial interest in property.

147. Levi is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that he is an individual capable of holding a legal or beneficial interest in property.

148. Mizrachi is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that he is an individual capable of holding a legal or beneficial interest in property.

149. Luhar is a "person" as that term is defined in 18 U.S.C. § 1931(3) in that she is an individual capable of holding a legal or beneficial interest in property.

150. Harklet is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

151. Nunaton is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

152. IL is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

153. IB is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

154. To the extent IBS is a valid corporate entity, in lieu of a fictitious business name, IBS is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

155. Nautell is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

156. Cash Traffic is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

157. Alacre is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that it is an entity capable of holding a legal or beneficial interest in property.

158. Does 1 through 20, and each of them, are "person[s]" as that term is defined in 18 U.S.C. § 1961(3) in that each is a person or entity capable of holding a legal or beneficial interest in property.

**The Enterprise**

159. Akhavan, Levi, Mizrachi, Luhar, Harklet, Nunaton, IL, IB, IBS, Nautell, Cash Traffic, Alacre, and Does 1 through 20, and each of them, have, through their association with one another, formed an enterprise separate and apart from themselves and separate from the improper conduct alleged herein (the "Enterprise"). The Enterprise is an association-in-fact enterprise, as that term is referenced in 18 U.S.C. § 1961(4), in that it is a union or group of individuals associated in fact although not a legal entity.

160. The Enterprise is engaged in, and its activities affect, interstate commerce in that through the Enterprise, Defendants, and each of them, operate a nationwide adult paysite, adult cam, and adult dating website business that advertises to and enters into financial transactions with consumers across the fifty (50) states and internationally.

161. Through the Enterprise, Defendants, and each of them, have associated together for a common purpose of engaging in a course of conduct. The common purpose is to evade liability to consumers, administrative and law enforcement agencies,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

and those with which they do business, such as Plaintiff, through the use of a complex web of domestic and foreign corporations through which liability and cash flow are untraceable.

**The Pattern of Racketeering Activity**

162. Defendants, and each of them, conducted and participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

**Predicate Act: Wire Fraud**

163. Defendants engaged in racketeering activity by violating 18 U.S.C. § 1343, the wire fraud statute, by contacting Plaintiff numerous times via interstate instant message ("IM") and electronic mail and making false representations and concealments, including that:

a. Defendants were a single company called "CECash";

b. Defendants intended to pay Plaintiff a fee for all income earned by Defendants as a result of the Referrals, pursuant to the Agreement; and

c. Defendants would compensate Plaintiff not only for Referrals of new publishers and networks, but also those publishers and networks that had previously enrolled with Defendants, but were not actively driving substantial traffic to Defendants at the time of the Referral. Defendants were a single company named "CECash," and that Defendants intended to pay Plaintiff for the Referrals pursuant to the Agreement, in furtherance of Defendants' scheme to defraud Plaintiff into making the Referrals and thereby substantially increasing Defendants' profits.

164. Plaintiff justifiably relied on Defendants' misrepresentations and concealments via interstate IM and electronic mail as described above, to its detriment.

//

//

//

KRONENBERGER ROSENFELD 150 Post Street, Suite 520, San Francisco, CA 94108

**Predicate Act: Financial Institution Fraud**

165. Defendants further engaged in racketeering activity by violating 18 U.S.C. § 1344, the financial institution fraud statute, by participating in a scheme to defraud financial institutions through the sale of Defendants' decline traffic.

166. Specifically, when Defendants sell their decline traffic—i.e., consumer financial information—to third parties, Defendants do so with the knowledge and intent that the third parties will initiate charges to the debit and credit cards of the consumers at issue.

167. When the third parties present the consumer financial information received from Defendants—including cardholder name, billing address, account number, expiration date, and security code—to the U.S. financial institutions who issued the consumer debit and credit cards, this presentment acts as a misrepresentation to the issuing financial institutions that the consumer has consented to the transaction.

168. The issuing financial institutions justifiably rely on the misrepresentations of the third parties—made in concert with Defendants—and, based on said reliance, approve the charges.

169. Accordingly, by selling and transferring consumer debit and credit card information to third parties with the knowledge and intent that the same will be presented to financial institutions as a misrepresentation that consumers have agreed to certain charges, Defendants have knowingly executed, or attempted to execute, a scheme or artifice to defraud a financial institution in violation of 18 U.S.C. § 1344(1)

170. Defendants have also violated 18 U.S.C. § 1344(2) by obtaining funds, credits, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises. Specifically, by selling Defendants' decline traffic to third parties, Defendants have obtained a portion, or "cut," of the funds generated by the third parties through the fraudulent debit and credit card transactions at issue.

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

171.    On information and belief, Defendants have engaged in thousands of acts of financial institution fraud as described herein.

**Predicate Act: Money Laundering**

172.    Defendants further engaged in racketeering activity by violating 18 U.S.C. § 1956, the money laundering statute, through their almost exclusive use of foreign financial institutions, foreign debit and credit card processors, and foreign financial accounts.

173.    Specifically, Defendants have received proceeds from unlawful activities, including from the illegal sale and transfer of consumer financial information to third parties with the knowledge that the consumer financial information will be used to process transactions to which the consumers did not consent.

174.    On information and belief, Defendants have transported, transmitted, or transferred, or attempted to transport, transmit, or transfer, these unlawful proceeds from a place in the United States to or through a place outside the United States.

175.    On information and belief, Defendants have participated in the transfers referenced in the preceding paragraph with the intent to promote the carrying on of the unlawful activity at issue—namely, the illegal sale and transfer of consumer financial information.

176.    Defendants' actions as described herein constitute money laundering in violation of 18 U.S.C. § 1956(a)(2)(A).

177.    On information and belief, Defendants have engaged in multiple unlawful transfers in violation of 18 U.S.C. § 1956(a)(2)(A).

**Predicate Act: Obstruction of Justice/Witness Tampering**

178.    As specifically relates to Plaintiff, Defendants further engaged in racketeering activity by violating 18 U.S.C. § 1512(b)(1), the witness tampering statute, by purposefully and corruptly persuading the Network to give false and misleading testimony in Defendants' favor.

//

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

179. Defendants' corrupt persuasion of the Network to give false and misleading testimony in Defendants' favor was done knowingly and with the intent to influence the Network's testimony in an official proceeding—namely, the instant action.

**The Resulting Damages to Plaintiff's Business and Property**

180. Plaintiff has been directly and proximately injured in its business and property by Defendants' racketeering violations.

181. As a direct and proximate result of Defendants' multiple acts of wire fraud, Plaintiff has been deprived of millions of dollars of revenue owed to Plaintiff for the Referrals under the Agreement.

182. As a direct and proximate result of Defendants' general scheme and acts constituting financial institution fraud and money laundering, Plaintiff has been deprived of revenue that Plaintiff would have earned on the declined transactions had they been approved through Defendants' website as expected by the consumers who initiated them.

183. As a direct and proximate result of Defendants' acts of witness tampering, Plaintiff's business relationship, and associated economic advantage, with many of Plaintiff's key Networks has been frustrated.

184. Defendants' acts were a substantial cause of the injuries of Plaintiff and these injuries were reasonably foreseeable.

185. Defendants had actual knowledge that their illegal acts were in violation of the law.

186. Under the provisions of 18 U.S.C. § 1964(c), Plaintiff is entitled to bring this action and to recover herein compensatory damages, treble damages, the costs of bringing this suit, and reasonable attorneys' fees.

//

//

//

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

## SEVENTH CLAIM FOR RELIEF

## (Conspiracy to Violate RICO

## Against Akhavan, Levi, Mizrachi and Luhar)

187.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 111 and 143 through 186.

188.   This claim is brought by Plaintiff alleging a cause of action under 18 U.S.C. § 1962(d) for conspiring to violate 18 U.S.C. § 1962(c).

189.   As alleged above in Plaintiff's Sixth Claim for Relief, Plaintiff, Defendants, and each of them is a "person" as that term is defined in 18 U.S.C. § 1961(3) in that each is an individual or entity capable of holding a legal or beneficial interest in property.

190.   As alleged above in Plaintiff's Sixth Claim for Relief, the Enterprise is an association-in-fact enterprise, as that term is referenced in 18 U.S.C. § 1961(4), in that it is a union or group of individuals associated in fact although not a legal entity.

191.   As alleged above in Plaintiff's Sixth Claim for Relief, Defendants, and each of them, conducted and participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

192.   In violation of 18 U.S.C. 1962(d), the Individual Defendants, and each of them, conspired to violate 18 U.S.C. § 1962(c) in that the Individual Defendants, and each of them, embraced and agreed to participate in the illegal objective of the Enterprise and the use of interstate wire communications, financial institution fraud, money laundering, and witness tampering to defraud and otherwise cause harm to Plaintiff.

## EIGHTH CLAIM FOR RELIEF

## (False Advertising in Violation of 15 U.S.C. § 1125(a)

## Against All Defendants)

193.   Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 111.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

194. Plaintiff and Defendants are competitors in that Plaintiff and Defendants are all engaged in the business of adult paysites, adult dating websites, and adult cam sites. As such, Plaintiff and Defendants compete for traffic from a limited pool of networks and publishers specializing in driving traffic to such websites.

195. Defendants engaged in false advertising and deceptive representations by making false statements of fact to Plaintiff's clients, including the Network.

196. The false advertising and deceptive representations made by Defendants concerned the quality of Plaintiff's services as a broker, the value of his work, and Plaintiff's honesty, ethical business practices, and overall reputation, including by way of example:

a. By stating that the Agreement did not exist, when Plaintiff had already represented to its clients that it did;

b. By stating that Defendants did not agree to pay Plaintiff any Referral fees for activating publishers or networks, including the Network, that had previously registered with Defendants but were not driving any significant traffic prior to Plaintiff's Referral, when Plaintiff had already represented to its clients that Defendants did so agree; and

c. That Plaintiff had done nothing warranting payment regarding the Referrals.

197. The false advertising and deceptive representations made by Defendants were believed by persons and entities with which Plaintiff does business, including networks and publishers.

198. Defendants' false advertising and deceptive representations to Plaintiff's clients constitutes commercial advertising or promotion within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

199. Defendants' false advertising and deceptive representations to Plaintiffs' clients misrepresent the nature, characteristics, and qualities of Plaintiff's services as a broker.

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

200. Plaintiff's injuries fall within the "zone of interests" protected by the Lanham Act in that they are injuries to Plaintiff's commercial interest in maintaining relations with networks and publishers for future referrals to third parties and injuries to Plaintiff's business reputation.

201. Plaintiff's injuries flow directly from the deception wrought by Defendants through their false advertising and deceptive representations.

202. As a direct and proximate result of Defendants' false advertising and deceptive representations regarding Plaintiff, publishers and networks with which Plaintiff had previously worked declined to meet with Plaintiff at the Forum and/or pursue future projects previously discussed with Plaintiff.

203. As a direct and proximate result of Defendants' false advertising and deceptive representations regarding Plaintiff, Plaintiff's business reputation has been irreparably damaged.

204. As a direct and proximate result of Defendants' false advertising and deceptive representations regarding Plaintiff, Plaintiff has suffered, and continues to suffer, severe damages, including but not limited to loss of business reputation and lost profits.

205. On information and belief, Defendants' conduct has been willful and intentional, and Defendants engaged in the actions alleged herein with the purpose of confusing and misleading publishers, networks, and others involved in the adult website industry. Accordingly, Plaintiff respectfully requests damages in an amount three times actual damages, and an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

206. Defendants' conduct will continue unless enjoined by this Court.

207. As a direct and proximate result of Defendants' willful and unlawful actions, Plaintiff has suffered and continues to suffer irreparable harm, for which there is no adequate remedy at law. Accordingly, Plaintiff is entitled to injunctive and equitable relief.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

1. That the Court enter a judgment in favor of Plaintiff and against Defendants, and each of them, finding that Defendants have:

   a. Breached the Agreement,

   b. Breached the implied covenant of good faith and fair dealing,

   c. Unjustly enriched themselves at Plaintiff's expense,

   d. Fraudulently induced Plaintiff to enter into the Agreement,

   e. Tortiously interfered with Plaintiff's business relationships,

   f. Violated RICO, 18 U.S.C. § 1962(c),

   g. Conspired to violate RICO, in violation of 18 U.S.C. § 1962(d), and

   h. Violated 15 U.S.C. § 1125(a);

2. That the Court award damages and monetary relief as follows:

   a. Damages of a compensatory and general nature, in an amount as alleged and demanded above and according to proof at trial,

   b. Treble damages pursuant to 18 U.S.C. § 1964(c),

   c. Punitive damages, where applicable,

   d. Costs of suit, and

   e. Reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) and 15 U.S.C. § 1117; and

3. Such other relief that the Court determines is just and proper.

Respectfully Submitted,

DATED: May 23, 2014

**KRONENBERGER ROSENFELD, LLP**

By: s/ Virginia Sanderson
Virginia Sanderson

Attorneys for Plaintiff

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

## REQUEST FOR JURY TRIAL

Plaintiff hereby demands a trial of this action by jury.

DATED: May 23, 2014

**KRONENBERGER ROSENFELD, LLP**

By: s/ Virginia Sanderson
Virginia Sanderson

Attorneys for Plaintiff

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108