UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VERDE MEDIA CORP.**, <br> Plaintiff, <br> v. <br> **RON LEVI, ET AL.**, <br> Defendants. | Case No. 14-cv-00891-YGR <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND** <br><br> Re: Dkt. Nos. 33, 38, 39, 50, 72 |

Plaintiff Verde Media Corp. initiated this action on February 27, 2014 against defendants Ron Levi, Ardeshir S. Akhavan, Harklet Enterprises, Ltd. ("HE"), Nunaton Company, Ltd. ("Nunaton"), Internet Business Services, LLC ("IBS"), Nautell Capital Ltd. ("Nuatell"), Cash Traffic Ltd., and Alacre Trading Ltd ("Alacre"). (Dkt. No. 1 ("Complaint").) On March 27, 2014, IBS moved to dismiss. (Dkt. No. 19.) On May 23, 2014, plaintiff filed its First Amended Complaint, mooting the initial motion to dismiss. (Dkt. No. 24 ("FAC"); *see also* Dkt. No. 35.) The First Amended Complaint added four new defendants: Guy Mizrachi, Kristi Luhar,[1] Internet Live, LLC ("IL"), and Internet Brand, LLC ("IB"). (FAC ¶¶ 1–2.)

The lawsuit relates to a purported web traffic referral agreement under which plaintiff was allegedly paid only $5,000 of the millions it was owed for brokering referrals to defendants' websites. Plaintiff asserts eight counts, each against all defendants unless otherwise noted: (i) Breach of Contract; (ii) Breach of the Implied Covenant of Good Faith and Fair Dealing; (iii) Unjust Enrichment/Restitution; (iv) Fraudulent Inducement; (v) Tortious Interference with Existing and Prospective Business Relationships; (vi) Violation of the Federal Racketeer

---

[1] Pursuant to stipulation, plaintiff's claims against Luhar were subsequently dismissed without prejudice. (Dkt. No. 64.)

Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"); (vii) Conspiracy to Violate RICO (against Akhavan, Levi, and Mizrachi); and (viii) False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a).

Plaintiff has not yet served all named defendants.[2] (*See, e.g.*, Dkt. Nos. 62, 82.) However, four defendants have separately moved to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6): IBS (Dkt. No. 33), IB (Dkt. No. 38), IL (Dkt. No. 39), and Akhavan (Dkt. No. 50). Pursuant to stipulation, the Court entered an order that the briefs filed in connection with those motions would be consolidated and also applicable to defendants Mizrachi and Levi.[3]

This matter came for hearing on September 23, 2014. Having carefully considered the papers submitted, the pleadings, and the arguments of counsel, and good cause shown, the Court **GRANTS** defendants' motions to dismiss **WITH LEAVE TO AMEND**.

## I.  FACTUAL ALLEGATIONS

The operative complaint is not a model of clarity. Nevertheless, the Court gleans the relevant factual allegations as follows.[4]

Plaintiff is an Internet traffic broker specializing in websites featuring adult content. (FAC ¶¶ 36, 40, 45 n.1.) Plaintiff's principal is Jeremy Greene. (*Id.* ¶ 62.) Plaintiff believes defendants "own and operate more than 50 publisher portal, adult entertainment, and adult dating websites through multiple entities." (*Id.* ¶ 55.) Defendants "have associated together for a common

---

[2] *See* Dkt. No. 85 (moving for an extension of time to serve named defendants HE, Nunaton, Nuatell, and Alacre).

[3] For ease of reference, these six moving defendants—IBS, IB, IL, Akhavan, Mizrachi, and Levi—shall simply be referred to as "defendants" herein. Moreover, the Court notes that each opening brief, opposition, and reply were substantially identical, other than a handful of arguments uniquely addressing Akhavan. The parties acknowledged their briefs were "substantially similar" (Dkt. No. 55 at 1) or "essentially identical to each other and . . . equivalent in substance" (Dkt. No. 45 at 1). (*See also* Dkt. No. 72.) In connection with future motion practice, for the sake of judicial efficiency, defendants—who are represented by the same counsel—are hereby required to bring a single motion which all defendants may join to the extent each intends to present the same arguments in the same manner.

[4] The complaint's non-conclusory factual allegations are generally accepted as true for purposes of considering this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

purpose of [evading] liability to consumers, administrative and law enforcement agencies, and those with which they do business, such as Plaintiff, through the use of a complex web of domestic and foreign corporations through which liability and cash flow are untraceable." (*Id*. ¶ 161.)

On or about November 6, 2012, plaintiff purportedly entered into an agreement with defendants "under the guise of a single business entity doing business as 'CECash.'" (*Id*. ¶ 61.) Akhavan, on behalf of defendants and by instant message, "fraudulently concealed and misrepresented the true identity of Defendants . . . ." (*Id*. ¶¶ 66–67.) Plaintiff now believes CECash is merely a fictitious business name used by HE and other corporate entities owned and operated by defendants. (*Id*. ¶ 68.)

The terms of the agreement were apparently reached in two forums. One, at an in-person meeting at 5146 Douglas Fir Road, Calabasas, California—a location Akhavan represented as the principal place of business of "CECash." (*Id*. ¶ 63.) Two, in a series of Skype instant messages. (*Id*. ¶ 62.) Both the in-person meeting and the instant messages were between plaintiff's principal Greene and defendant's representative Akhavan. (*Id*. ¶ 62.) "Although many of the terms of the Agreement were memorialized in writing via the IMs, the Agreement, as a whole, was never reduced to a single writing." (*Id*. ¶ 62.) The instant messages were, "for the most part," transmitted via interstate wire between Akhavan in California and Greene in Florida. (*Id*. ¶ 64.)

The alleged terms of the agreement follow:

   a. Plaintiff agreed to refer publishers and networks to Defendants (the "Referrals");
   b. Defendants agreed to pay Plaintiff $5,000 upfront to get the Referral publishers and networks up and running with respect to their advertising for Defendants;
   c. Defendants further agreed to pay Plaintiff $10 for each financial transaction resulting from traffic driven to Defendants by the Referrals; and
   d. Plaintiff and Defendants further expressly agreed that the Agreement, and Defendants' payment obligations, would extend to Referrals of new publishers and networks to Defendants as well as publishers and networks that had previously enrolled with Defendants, but were not actively driving substantial traffic to Defendants at the time of the Referral.

(*Id*. ¶ 65.) Apparently, the deal involved plaintiff brokering deals between, on the one hand,

3

1    various publishers and advertising networks (collectively, "ad networks"), and on the other,
2    defendants, whereby those ad networks would refer visitors to defendants' sites. Then, for each
3    resulting "financial transaction" between a referred visitor and defendants, plaintiff would receive
4    a $10 commission. Plaintiff was also entitled to a $5,000 upfront fee. Defendants wired $5,000 to
5    plaintiff on or about November 8, 2012. (*Id*. ¶ 69.)

6    However, despite plaintiff making referrals pursuant to the agreement that plaintiff
7    believes have resulted in millions of dollars of financial transactions benefitting defendants,
8    defendants refused to pay him any of the $10 commissions. (*Id*. ¶¶ 70–72.) In a September 24,
9    2013 email to Greene, in "direct contradiction" to earlier instant messages promising to pay
10   plaintiff for referrals, Akhavan wrote: "Go find a real job instead of being a little whiney broker,
11   do something of value and perhaps you will earn value." (*Id*. ¶ 73.) Plaintiff estimates that under
12   the agreement, defendants will owe him more than $5 million by the end of 2014, "with the
13   amount growing exponentially thereafter." (*Id*. ¶ 76.)

14   Plaintiff believes defendants use foreign payment processors to avoid U.S. liability, but
15   that as a result certain transaction attempts on their sites are rejected by U.S. financial institutions
16   based on suspicion of fraud. (*Id*. ¶¶ 78–80.) Plaintiff, also on information and belief and by way
17   of a "hypothetical example," alleges defendants commit fraud by selling this "decline traffic" to
18   third parties who then run fraudulent charges using the billing information provided. (*Id*. ¶¶ 81–
19   87.) Defendants admitted to selling decline traffic, even offering to sell some to Greene. (*Id*.
20   ¶¶ 86–87.) Defendants circumvent their agreement with plaintiff by using these foreign payment
21   processors, which results in decline traffic which is then sold to third parties. (*Id*. ¶¶ 91–92.)

22   Additionally, plaintiff believes defendants began contacting ad networks, requesting they
23   cease doing business with "Greene (and therefore plaintiff)." (*Id*. ¶¶ 94–96.) Defendants, on
24   information and belief, also made false statements to plaintiff's clients, such as claiming that
25   defendants did not have an agreement with plaintiff. (*Id*. ¶ 97.) On information and belief,
26   plaintiff lost business as a result. (*Id*. ¶ 98.)

27   After this action was instituted, plaintiff and defendants, as well as "the large Referral
28   network referenced in the original complaint," attended the Phoenix Forum trade convention for

4

adult websites in Tempe, Arizona on March 27–29, 2014.  (*Id*. ¶¶ 99–101.)  Plaintiff had reserved a table at a nightclub for a meeting with that network and three other businesses.  (*Id*. ¶ 102.)  Plaintiff planned to broker deals between the network and the other businesses.  (*Id*. ¶ 102.)  But the network ended up cancelling the meeting.  (*Id*. ¶ 109.)  Instead, the network attended an "expensive event" with defendants.  (*Id*. ¶ 109.)  Indeed, defendants "lavished" benefits on the network's representatives during the conference, including putting them up in a luxury suite at the W Hotel in Scottsdale and treating them to "exclusive meals and events."  (*Id*. ¶¶ 100, 104–105.)  Plaintiff believes defendants did all of this "to corruptly persuade the Network and its representatives—e.g., witnesses to this action—with the intent to influence their testimony."  (*Id*. ¶ 105.)  Defendants also did so in order to "convince" the network to end its business relationship with plaintiff.  (*Id*. ¶ 107.)   They succeeded.  (*Id*. ¶ 108.)

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)).  The Court will not assume facts not alleged, nor will it draw unwarranted inferences.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted against that defendant.  Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d

696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79; see also *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

Additionally, Rule 9 establishes a heightened pleading standard for allegations of fraud. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (To be alleged with particularity under Rule 9(b), a plaintiff must allege "the 'who, what, when, where, and how'" of the alleged fraudulent conduct.); *see also Tatung Co. v. Shu Tze Hsu*, No. 13-cv-01743, 2014 WL 4306561, at *18 (C.D. Cal. Sept. 2, 2014) (applying Rule 9(b)'s heightened pleading standards to state law claims brought in federal court). Moreover, where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of [Federal Rule of Civil Procedure] 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04, 1106 (9th Cir. 2003) (holding "the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct [alleged] so that they can defend against the charge and not just deny that they have done anything wrong" (internal quotations and citations omitted)).

**III.   DISCUSSION**

Defendants move to dismiss all of plaintiff's counts for failure to state a claim. Plaintiff asserts three claims under federal law and five under state law. The Court may have supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367. The First Amended Complaint does not allege diversity jurisdiction and at the September 23, 2014 hearing, plaintiff acknowledged that

1  diversity jurisdiction is likely lacking because the predecessor entity to plaintiff during the

2  relevant time period was a California entity for diversity purposes—as are multiple defendants.

3  *See* 28 U.S.C. § 1332.  If the federal claims are dismissed, the Court will have no basis to exercise

4  supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c)(3).  Thus, the Court

5  addresses plaintiff's federal law claims first.

### A.  Federal Law Claims

#### i.  Count VI: Substantive RICO Violation—18 U.S.C. § 1962(c)

Under Section 1962(c), "[i]t shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  To state a claim, plaintiffs must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (*en banc*).

Section 1962(c) requires plaintiffs to allege two distinct entities: a "person" and an "enterprise."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 166 (2001).  Section 1962(c) liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  *Id.* at 163 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).  An enterprise that is not a legal entity, such as a corporation, is commonly known as an "association-in-fact" enterprise.  *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 871 F. Supp. 2d 933, 939 n.6 (N.D. Cal. 2012).  The Ninth Circuit holds "an association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'"  *Odom*, 486 F.3d at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)); *Boyle v. United States*, 556 U.S. 938, 944 (2009).  To show an association-in-fact enterprise, plaintiffs must allege facts to establish three elements: (1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that provide sufficient evidence the associates function as a continuing unit.  *Odom*, 486 F.3d at 552 (citing *Turkette*, 452 U.S. at 583).

Rule 9(b)'s pleading requirements apply to RICO claims involving fraudulent conduct.  *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (requiring the

7

1   complaint "state the time, place, and specific content of the false representations as well as the
2   identities of the parties to the misrepresentation").

3   As defendants point out, "to state a claim under civil RICO, the plaintiff is required to
4   show that a RICO predicate offense 'not only was a but for cause of [its] injury, but was the
5   proximate cause as well.'" *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting
6   *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Plaintiff identifies four predicate
7   acts: (i) wire fraud; (ii) financial institution fraud; (iii) money laundering; and (iv) obstruction of
8   justice/witness tampering.  As to the first predicate, plaintiff has failed to identify "the time, place,
9   and specific content of the false representations as well as the identities of the parties to the
10  misrepresentation" in all instances, as required under Rule 9(b).  The confused timeline and vague
11  circumstances surrounding the instant messages at issue are insufficient, as discussed in greater
12  detail below in connection with plaintiff's state law claims.  As to the second and third predicates,
13  plaintiff has not demonstrated it suffered any injury proximately caused by defendants' conduct in
14  connection therewith.  Any links between defendants' alleged use of foreign transaction
15  processors and its sale of resulting "decline traffic," or defendants' purported money laundering
16  activity—which plaintiff claims harmed him by facilitating defendants' circumvention of their
17  obligations to plaintiff—are far too attenuated from plaintiff's purported harm to be deemed a
18  proximate cause thereof.  The Court need not reach the merits of defendant's final purported
19  predicate—obstruction of justice/witness tampering—because those allegations center around a
20  single incident and RICO requires a "pattern" of related racketeering predicates.  *Turner v. Cook*,
21  362 F.3d 1219, 1229 (9th Cir. 2004) ("[W]hile two predicate acts are required under the Act, they
22  are not necessarily sufficient.").

23  As leave to amend is liberally granted, Count VI is **DISMISSED WITH LEAVE TO AMEND**
24  for the reasons stated above.

25      **ii.   Count VII: Conspiracy to Violate RICO—18 U.S.C. § 1962(d)**

26  Plaintiff's seventh count for conspiracy to violate RICO is asserted only against defendants
27  Akhavan, Levi, and Mizrachi.  Under Section 1962(d), "[i]t shall be unlawful for any person to
28  conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. §

1962(d).  "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses."  *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  The defendants "must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor."  *Id*. (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)).  Moreover, the defendant must also have been "aware of the essential nature and scope of the enterprise and intended to participate in it."  *Id*. (quoting *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993)).  In *Howard*, the Ninth Circuit affirmed the "district court['s holding] that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy."  *Id*.; *see also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (dismissing RICO 1962(d) claim where complaint failed to satisfy Rule 9(b)'s pleading requirements as to 1962(c) predicates); *Turner*, 362 F.3d at 1231 n.17 (affirming dismissal of RICO claims, including conspiracy, where plaintiffs failed to allege, among other things, acts of mail fraud, wire fraud, and a pattern of racketeering activity).

Accordingly, because plaintiff has failed to allege the requisite substantive elements of RICO under Section 1962(c), its claim for conspiracy under Section 1962(d) also fails and is **DISMISSED WITH LEAVE TO AMEND**.

         **iii.**      **Count VIII: False Advertising—15 U.S.C. § 1125(a)**

Plaintiff's final federal claim alleges false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a).  The required elements are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1181 (N.D. Cal. 2007) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).  Such

9

representations must be commercial speech made by a defendant "in commercial competition with plaintiff" and "for the purpose of influencing consumers to buy defendant's goods or services." *Id.* at 1181–82 (citing *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)). While they need not be part of a "'classic advertising campaign,'" the statements "must be 'disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.'" *Id.*

Among other flaws with this claim, plaintiff does not allege defendants made false statements via widespread advertisement but instead through statements directed to one or, perhaps, "other" ad networks—none of which are specifically identified by name. This is insufficient to state a plausible claim for false advertising under the Lanham Act. The complaint also suggests at least one of the statements at issue specifically targeted Greene and not plaintiff. As a result, Count VIII is also **DISMISSED WITH LEAVE TO AMEND**.

### B.     State Law Claims

The Court notes that unless federal claims ultimately survive, it will decline to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3); *Wade v. Regional Credit Assoc.*, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice."). Nevertheless, because the federal claims are dismissed herein with leave to amend, the Court will also address the deficiencies of the state law claims below.

#### i.     Count I: Breach of Contract

Plaintiff alleges defendants materially breached a "valid and enforceable contract" between the parties, resulting in $5 million in damages. (FAC ¶ 113.) Under California law, the elements for breach of contract are: "(1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages." *Bergman v. Bank of Am.*, No. 13-cv-00741 JCS, 2013 WL 5863057, at *15 (N.D. Cal. Oct. 23, 2013) (quoting *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001)).

Defendants identify at least four deficiencies with the FAC. First, they cite California

Civil Code section 1550 for the proposition that two elements "essential to the existence of a contract" are missing here: "[p]arties capable of contracting" and "their consent." (Dkt. No. 33 ("IBS Mot.") at 6–7.) Second, they argue that plaintiff's "'[u]ndifferentiated pleading against multiple defendants is improper.'" (*Id*. at 7 (quoting *Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011)).) Third, defendants complain of the vague timeline of events surrounding the purported contract formation. (*Id*. at 8.) Finally, defendants challenge plaintiff's anachronistic references to "defendants" in November 2012—when plaintiff was apparently not even aware of the existence and/or involvement of each defendant—in describing the terms of agreement allegedly reached at that time.

The Court agrees that the FAC lacks sufficient clarity. The FAC does not allege when the purported agreement was formed—during the in-person meeting or by instant message. Plaintiff's counterparty is also undefined. Plaintiff alleges it believed it was contracting with "CECash," but now argues the agreement was with all defendants. Plaintiff has not alleged sufficient facts to render plausible the existence of an agreement with each of the many defendants to this action, purportedly members of a "complex collection of domestic, foreign, and international corporate entities," arising merely from an in-person discussion and a few short and vague instant messages with Akhavan.

Next, the terms of the contract as alleged are also vague. It appears that plaintiff was to "refer" third-party ad networks to do business with defendants by themselves "referring" web visitors to defendants' sites, and that this would include "activating" existing ad networks that had previously registered with defendants' sites but were not yet driving "significant traffic" to those sites. For example, what constitutes "significant traffic" is nowhere defined.

Finally, plaintiff conflates his breach of contract claim with fraudulent overtones which implicates a different cause of action *and* a heightened pleading standard. Plaintiff alleges the contract formation involved a misrepresentation by Akhavan regarding the existence of the counterparty to the agreement and the contract's terms were established and/or memorialized based on this and other fraudulent representations by Akhavan. (*See, e.g.*, FAC ¶¶ 66, 67.) Rule 9(b)'s heightened pleading standard applies when "the claim 'sounds in fraud' by alleging that the

defendant engaged in fraudulent conduct, but the claim itself does not contain fraud as an essential element" and "to any allegations of fraudulent conduct, even when none of the claims in the complaint 'sound in fraud.'" *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089–90 (C.D. Cal. 2009) (quoting *Vess*, 317 F.3d at 1102–06). While plaintiff's breach of contract claim does not contain fraud as an essential element, the "allegations of fraudulent conduct" by defendants exacerbates the issue of clarity. Where fraud is at issue, at the minimum, such claims must be supported by allegations establishing "what is false or misleading about a statement [and] why it is false, including the 'who, what, when, where, and how of the misconduct charged.'" *Id*.

In light of the foregoing, Count I is **DISMISSED WITH LEAVE TO AMEND**.

### ii. Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing

In Count II, plaintiff alleges defendants breached the implied covenant of good faith and fair dealing under the same alleged agreement discussed above. "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Smith v. City & Cnty. of San Francisco*, 225 Cal. App. 3d 38, 49 (Cal. Ct. App. 1990). The Court has found the operative complaint insufficiently pleads "the existence of a contractual relationship between the parties" in connection with Count I. For that reason, Count II is also **DISMISSED WITH LEAVE TO AMEND**.[5]

### iii. Count III: Unjust Enrichment/Restitution

Plaintiff's third count pleads, in the alternative to the two preceding counts, that defendants were unjustly enriched by plaintiff's referral of ad networks to defendants' sites. Unjust enrichment is a theory of recovery in quasi-contract, in which a plaintiff contends the defendants received a benefit to which they were not entitled. *Paracor Fin, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). To state a claim for unjust enrichment, plaintiff must allege "receipt of a benefit and unjust retention of the benefit at the expense of another."

---

[5] Having dismissed the claim on other grounds, the Court need not reach at this time defendants' argument that Count II is impermissibly duplicative of Count I.

*Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000).

A claim for unjust enrichment "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin.*, 96 F.3d at 1167. Therefore, defendants argue this claim is barred because plaintiff also asserts breach of an express agreement. At this early stage of the case, plaintiff may plead in the alternative and "assert claims based on both the existence and the absence of a binding agreement between the parties." *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 908 (N.D. Cal. 2011) (citing Fed. R. Civ. P. 8(d)(3)). However, Count III relies upon allegations of fraudulent conduct by defendants. As noted above, such allegations must all meet the heightened pleading standard of Rule 9(b)—and they currently fail to do so. Therefore, Count III is **DISMISSED WITH LEAVE TO AMEND**.

### iv.     Count IV: Fraudulent Inducement

Plaintiff's fourth count alleges defendants fraudulently induced plaintiff to enter into the purported agreement and refer ad networks to defendants' sites. This claim must satisfy the following elements: (1) misrepresentation; (2) knowledge of the falsity of the representation; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages. *Swingless Golf Club Corp. v. Taylor*, 732 F. Supp. 2d 899, 908 (N.D. Cal. 2010) (citing *Stewart v. Ragland*, 934 F.2d 1033, 1043 (9th Cir. 1991)).

As to the first element, plaintiff points to the following alleged misrepresentations by Akhavan: (1) that defendants were a single entity (called "CECash"); (2) that defendants intended to pay plaintiff referral fees; and (3) that these fees would encompass referrals of both new and existing ad networks that were "not actively driving substantial traffic" to defendants' sites. (FAC ¶ 130.) These allegations fail to satisfy Rule 9(b)'s heightened pleading standard. It is not logical that Akhavan named each of the defendants and then claimed they were a specific entity, as a straightforward reading of the plain language of the operative complaint suggests. It is also unclear what specific level of "substantial traffic" was at issue. Generally, the underlying factual allegations lack the necessary detail to put defendants on notice as to the "who, what, when, where, and how" surrounding these purported statements and their broader context. As defendants point out, these three alleged misrepresentations are also self-contradicting, because if Akhavan

claimed plaintiff was contracting with a single entity, it is not credible that he would have contemporaneously asserted the shared intent of all of the defendants to this action. The timeline of when the contract was formed as compared to when these purported misrepresentations were made is also unclear.[6]

Plaintiff's allegations as to the remaining elements of this claim are largely conclusory. While not subject to Rule 9(b)'s heightened pleading standards, allegations of knowledge or intent that are merely conclusory are insufficient. *See Kowalsky v. Hewlett-Packard Co.*, No. 10-cv-02176, 2011 WL 3501715, at *3 (N.D. Cal. Aug. 10, 2011). Plaintiff also fails to set forth specific facts regarding the participation of any defendant in the purported fraud other than Akhavan. Moreover, where, as here, promissory fraud is at issue, "'allegations necessary to show contemporaneous intention not to perform should be clear, specific and unequivocal,' thereby differentiating the false promise from a mere broken promise." *Valencia v. Sharp Electronics Corp.*, 561 F. App'x 591, 593–94 (9th Cir. 2014). The relevant allegations in the operative complaint do not meet this standard. Thus, Count IV is **DISMISSED WITH LEAVE TO AMEND**.

### v. Count V: Tortious Interference

Plaintiff's fifth count asserts tortious interference with existing and prospective business relationships. Because plaintiff alleges no preexisting contract between it and any of the third parties at issue, and in light of plaintiff's apparent concession of this point in opposing the motions to dismiss (*see, e.g.*, IBS Oppo. at 19), the Court reads this claim as referring to the tort of intentional interference with prospective economic relations. *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 381 (1995) ("[W]e use the phrase 'interference with economic relations' to refer to the tort generally known as 'intentional interference with prospective contractual or economic relations' and to distinguish it from the cognate form, 'intentional interference with contract.'"). Defendants argue the complaint has failed to allege facts supporting

---

[6] Plaintiff argues the timeline is sufficiently clear because this count alleges plaintiff relied on these misrepresentations and, "as a result of" that reliance, entered into the agreement. (Dkt. No. 36 ("IBS Oppo.") at 12 (citing FAC ¶133).) However, defendants are still not sufficiently on notice about when and where they allegedly made all of the purportedly false statements at issue.

14

the elements thereof: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Youst v. Longo*, 43 Cal. 3d 64, 71 n.6 (1987). Moreover, plaintiff has the burden of pleading "that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.'" *Della Penna*, 11 Cal. 4th at 393 (quoting *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 209 (1978)). For instance, defendant's "motive" or "means" may be wrongful pursuant to statute, regulation, or common law. *Top Serv. Body Shop*, 283 Or. at 209, 210 n.11 (describing wrongful conduct as including violence, threats, intimidation, deceit, misrepresentation, bribery, defamation, or disparaging falsehood).

Plaintiff does not allege, in a non-conclusory manner, any preexisting relationship with a specifically identified third party with whom defendants interfered, instead referencing generally "one of the largest Referral networks" and "other Referrals." Plaintiff also fails to allege the necessary wrongful conduct by defendants in connection with their purported interference. While defamation can constitute wrongful conduct, plaintiff has failed to allege the plausible existence of an agreement between it and defendants, as discussed above. Therefore, on the face of the pleadings at this juncture, defendants' denial of the existence of such an agreement was not plausibly false or defamatory. Although defendants raised this issue, plaintiff failed to respond in opposing dismissal. (*See* IBS Mot. at 22; IBS Oppo. at 19.) Therefore, Count V is **DISMISSED WITH LEAVE TO AMEND**.

### C. Leave to Amend

Leave to amend is liberally granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chodos v. West Pub. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002). One exception to this general rule of permissiveness, however, is where amendment would be futile. *Foman*, 371 U.S. at 182; *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004). In light of this liberal standard, the Court grants plaintiff leave to amend and emphasizes that any amended pleading requires

much greater clarity.

Plaintiff shall file a Second Amended Complaint ("SAC") by no later than **twenty-one (21) days** from the date of this Order. The SAC must comport with the guidelines set forth in this Order. The SAC must also satisfy the requirements of Rule 8 and provide "*a short and plain statement* of [each] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (emphasis added). Further, plaintiff's counsel is reminded to review its obligations under Federal Rule of Civil Procedure 11(b). If an SAC is not timely filed, the complaint will be deemed dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, defendants' motions to dismiss are **GRANTED** and plaintiff's First Amended Complaint is **DISMISSED WITH LEAVE TO AMEND**.

This Order terminates Docket Nos. 33, 38, 39, and 50.

**IT IS SO ORDERED.**

Dated: January 28, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**